Submitted on briefs October 12; affirmed November 29, 1949

## PORTLAND TRUST AND SAVINGS BANK *v.* LINCOLN REALTY CO. ET AL., McFAUL ET AL. AND HOTEL ST. ANDREWS, AND HOTEL EUGENE

211 P. 2d 736

*Cake, Jaureguy & Tooze,* of Portland, for appellants.

*Hall, Caldwell & Roehr,* of Portland, for respondents.

ROSSMAN, J.

This is an appeal by the plaintiff from a decree of the Circuit Court which granted the plaintiff judgment against the defendants in the amount of $97,565.00. This is the second time that this cause has been before this court. The decision upon the first appeal, which is reported in 180 Or. 96, 170, P. 2d 568, identifies the parties and delineates the basic facts out of which the controversy originated. The previous appeal was from a decree which awarded the plaintiff judgment in the amount of $125,000.00. Our decision held that the judgment was excessive to the extent of "at least $14,892.05," and remanded the cause to the Circuit Court for the purposes which we will presently mention.

The Lincoln Realty Company, a dissolved corporation, which is one of the defendants, was the owner of a hotel property in Portland known as the St. Andrews Hotel, and was indebted upon a series of

negotiable promissory notes totaling $140,000.00, of which the plaintiff was the payee. The notes were secured by a real estate mortgage which named the plaintiff mortgagee. When the notes were issued it was contemplated that they would be sold to investors, and that course was taken. The plaintiff retained no beneficial interest in them. This appeal, as the first, is from the foreclosure decree. The issues concern the amount of the judgment and the rate of interest to which the plaintiff is entitled.

The Lincoln Realty Company became financially embarrassed and unable to meet the obligation evidenced by the notes. In an effort to prevent foreclosure of the mortgage, it first made an assignment of the income produced by the hotel and, next, without terminating the assignment, leased the hotel to a corporation entitled Hotel St. Andrews, Inc., by an instrument which required the lessee to pay the plaintiff monthly $900.00 applicable to the indebtedness evidenced by the notes and $157.50 upon the unpaid balance due upon the purchase price of the furnishings of the hotel. The rental stipulated in the lease was 25 per cent of total room rentals. If 25 per cent of that gross was less than $1,057.50, the lessee was, nevertheless, bound to pay $1,057.50. If 25 per cent of the gross room rental was more than $1,057.50, the lessee was bound to pay the larger sum, but was entitled to credit for the excess in a future month when 25 per cent of gross was less than $1,057.50. It was not the duty of the lessee to pay $1,057.50 plus 25 per cent of room rentals. If 25 per cent of room rentals equalled or exceeded $1,057.50 and the sum was paid, the lessee had discharged its full duty. Hotel St. Andrews, Inc., and the plaintiff are two of the three appellants. The third is Hotel

Engene, Inc., the parent of Hotel St. Andrews, Inc., and owner of all of its corporate stock. The characterization in our prior decision of the two hotel companies as "one and the same entity" has not been challenged. The respondents are the succesors to the title of Lincoln Realty Company.

The payments exacted of the lessee by the provisions of which we have taken notice were not payable to the Lincoln Realty Company. The monthly item of $157.50 was payable to the conditional vendor of the hotel's furnishings and the amount of $900.00 (or more) was payable to the plaintiff. For an adequate delineation of the terms of the lease and the assignment, reference is made to our prior opinion.

The plaintiff was obliged, upon receipt of the $900.00 (or more) portion of the monthly payment, to apply it upon the mortgage indebtedness (interest and principal). In that way, a total of approximately $15,000.00 of notes were retired and the indebtedness was reduced to $125,000.00. As indicated in our previous decision, the successors in interest to the Lincoln Realty Company (appellants in the first appeal, respondents in the present one) contended that the lessee failed to pay the full amount of the monthly rentals exacted of it by the lease and submitted that if the required rentals had been paid the aggregate of the notes would have been reduced to a sum materially less than $125,000.00. Our decision held that the lessee diverted rental moneys amounting to "at least $14,-892.05" to unauthorized purposes and that at least that much should be deducted from $125,000.00 in determining the amount of the judgment to which the plaintiff was entitled. We used the term "at least" because all needed figures were not before us. The total of

$14,892.05 was made up as follows: $10,129.47 represented an amount which the lessee had paid for repairs; $2,214.36 represented items which the lessee had paid for carpet, insurance premiums and taxes upon personal property; $2,548.22 was the amount of rentals delinquent November 1, 1942, and not thereafter paid. It is not claimed upon this appeal that we made any error in the two sums first mentioned ($10,129.47 and $2,214.36), but the appellants argue that the lessee was not delinquent in the payment of rentals November 1, 1942, and, therefore, that we erroneously reduced the mortgage indebtedness by the deduction of $2,548.22.

Our opinion said:

" * * * It is our belief that the judgment is excessive to the extent of at least $14,892.05. It is apparent that rentals have become due since the complaint was filed, and, of course, so far as the record goes, they have not been applied upon the mortgage debt. The circuit court should determine their amount. If a part of their total was applicable to the payment of interest or of taxes, the proper deductions should be made. The balance should be applied upon the mortgage.

"The challenged decree is set aside and the cause is remanded to the circuit court to enter the proper decree."

The mandate which issued from this court said:

" * * * the judgment is excessive as to principal to the extent of at least $14,892.05.

"It is, therefore, considered, ordered and decreed that the decree of the Circuit Court be reversed and set aside, and that the Circuit Court should determine the amount of rentals since the institution of this suit to be applied upon the mortgage debt. If a part of their total was applicable to the payment of interest or of taxes, the proper

deductions should be made and the balance should be applied upon the mortgage.

\* \* \* .

"It is further ordered and decreed that this cause be remanded to the court below from which the appeal was taken with directions to set aside the decree and the sale thereunder and enter the proper decree in conformity with the opinion of the court herein, and in accordance herewith."

Upon the hearing which occurred after the Circuit Court received our mandate, further evidence was presented and then the decree was entered which is challenged by the plaintiff upon this appeal.

The first assignment of error declares:

"The Court erred in overruling appellants' contention that the item of $2,548.22, alleged deficit on rentals during the months April to October, 1942, inclusive, did not, as of the date of the further accounting, exist, and further erred in deducting that amount from the mortgage debt."

In order to show the source of the challenged item of $2,548.22 and the manner in which we determined its amount, we quote the following part of our prior opinion:

"Leland B. Arnett, an accountant, upon the request of the appellants, examined the rental account of Hotel St. Andrews, Inc., for the period, July, 1939, to and including October, 1942. His unchallenged testimony shows that the lessee was delinquent at the end of that period to the extent of $6,545.65 in meeting the demand that it pay monthly $900 upon the real estate mortgage. Itemized rental sheets prepared by Mr. Vincent's office covering the seven-month period beginning April, 1942, are before us. In those seven months the cash

receipts from room rentals and 25 per cent. of that sum were, respectively:

| $ | 25% is $ |
|---|---|
| 4,338.30 | 1,084.57 |
| 4,781.08 | ,, ,, 1,195.27 |
| 5,066.16 | ,, ,, 1,266.54 |
| 5,338.86 | ,, ,, 1,334.71 |
| 5,573.45 | ,, ,, 1,393.36 |
| 5,571.98 | ,, ,, 1,392.99 |
| 5,533.05 | ,, ,, 1,383.26 |
| $ 36,202.88 | $ 9,050.72 |

"In those seven months the lessee paid only $5,400 upon the mortgage (six times $900). But in each of those months, it will be seen from the above figures, the lessee should have paid more than $900. The above sums total $36,202.88, and 25 per cent. of that total is $9,050.72 or $3,650.72 more than the lessee paid. Since the lease says that the lessee is entitled to credit upon the 25 per cent. rental for the monthly installment of $157.50 which the lease required it to pay upon the furnishings, we must reduce the sum of $3,650.72 by $1,102.50 (seven times $157.50) and we have $2,548.22. By adding $6,545.65 to $2,548.22 we have $9,093.87. But to get the figure which will accurately represent the lessee's arrears, we must deduct $900 from $9,093.87. The $900 just mentioned represents the payment which the lessee should have made in April, 1942, but failed to make. Since Mr. Arnett took it into account in computing his sum of $6,545.65, and we did not in arriving at our figure of $2,548.22, we must now deduct it from the above total of $9,093.87. After making the subtraction we have $8,193.87, the total arrears on November 1, 1942. In making that statement we assume that nothing more than $900 monthly was called for up to April 1, 1942. If something more was payable, the arrears were, of course, greater than our figure indicates. The bank kept no records showing the hotel's earnings and none are available to us prior to April 1, 1942.

" * * * Beginning in the summer of 1942 the earnings under the 25 per cent. clause monthly exceeded $1,057.50 by a substantial margin, and, since the lease authorizes the use of excess toward defrayment of advances made in months when the rentals did not amount to $1,057.50, we are going to assume that the excesses discharged the aforementioned delinquency of $6,545.65."

It will be observed from the passage just quoted that we assumed favorably to the present appellants that the delinquency of $6,545.65 was discharged sometime after November 1, 1942, by earnings made by the 25 per cent clause. The delinquency of $2,548.22, according to our finding, arose out of the lessee's neglect to meet the demands of the 25 per cent clause in the seven-month period which ended October 31, 1942. The duty to pay the 25 per cent was unconditional and, therefore, the delinquency of $2,548.22 could not have been discharged by earnings in future months. There is no contention that we erroneously used any figures before us upon the first appeal or that there are any errors in the calculations which appear in the quoted passage. But the appellants argue that data they presented after the cause was remanded show that the purported delinquency of $2,548.22 never existed. They make no contention that the data was unavailable to them at the time of the first trial.

The analysis of the facts and figures set forth in the quoted passage was in response to issues which developed upon the prior trial. One of the principal contentions advanced by the parties, who were appellants upon the first appeal and are now respondents, was that the lease failed to pay the stipulated rentals.

Section 10-810, O. C. L. A., says:

" * * * upon an appeal from a decree given in any court the suit shall be tried anew upon the transcript and evidence accompanying it."

It will be seen that our statement concerning the item of $2,548.22 was not narrative incidental to a consideration of a principle of law, but that it constituted an analysis of the evidence for the purpose of determining the issue of delinquency. Without determining whether or not the lessee was delinquent in the payment of the stipulated rental, and, if delinquent, its amount, it was impossible to know whether or not the decree which was attacked by the first appeal was erroneous. As we have said, the appellants in the first appeal (respondents in this one) contended that the decree awarded an excessive judgment against them. They also contended that if, as they argued, the stipulated rent had not been paid, the decree should cancel the lease. It will be seen that it was necessary for us to determine whether or not a delinquency existed, and if one existed, its amount. Our conclusion that the lessee was delinquent November 1, 1942, in the amount of $2,548.22 resolved that issue. The statement that the lessee was delinquent $2,548.22 was not one of fact only; it was one of fact and of law.

■ This court like virtually all other appellate courts, employs the rule of appellate practice known as the law of the case, whereby the opinion on a prior appeal is deemed controlling upon a subsequent appeal of the same case. A recent instance is *Public Market Co. v. Portland*, 179 Or. 367, 170 P. 2d 586. See also *Shaver Co. v. Eagle Star Ins. Co.*, 177 Or. 410, 162 P. 2d 789 (states the rule); *Bank of Commerce v. Ryan*, 157 Or. 231, 69 P. 2d 964 (states trial court's duty upon

receipt of mandate) ; and *Simmons v. Washington F. N. Ins. Co.*, 140 Or. 164, 13 P. 2d 366 (cites many supporting authorities).

■ We know of no reason why the conclusion reached by us and set forth in the quoted passage of our prior decision that a delinquency of $2,548.22 existed on November 1, 1942, in the lessee's duty to pay 25 per cent of gross room rentals is not protected by the law of the case. Although the rule known as the law of the case generally is not applicable to pure questions of fact (see 5 C. J. S., Appeal and Error, § 1834, p. 1288), yet the conclusion concerning the delinquency of $2,548.22 was not one of fact only.

It is true that the mandate directed the Circuit Court to "determine the amount of rentals since the institution of this suit to be applied upon the mortgage debt," but, obviously, it was the duty of the Circuit Court, as it discerned, to accept as final our conclusion that in the seven months ending October 31, 1942, a delinquency in rental payment amounting to $2,548.22 existed.

The second assignment of error follows:

"The Court erred in holding that plaintiff was not entitled to interest at the rate of 10% per annum and in holding that interest should be allowed only at the rate of 7% per annum."

■ The notes which constitute the basis for the judgment bore interest at the rate of seven per cent per annum, but the real estate mortgage which secured their payment provided for interest "from the date of maturity at the highest rate that may lawfully be charged." That clause is invoked by the plaintiff in support of this assignment of error. The highest contract rate is 10 per cent: § 66-101, O. C. L. A.

.

The complaint which instituted this suit alleged:

"There is now due and owing to plaintiff on said promissory notes and mortgage the sum of $125,000.00 with interest thereon at the rate of 7% per annum from the 12th day of July, 1943, until paid."

The material part of the prayer follows:

"Plaintiff prays for judgment and decree as follows:

"(a) For a judgment against defendant Lincoln Realty Company, a corporation, for the sum of $125,000.00, with interest thereon at the rate of 7% per annum from July 12, 1943, until paid, * * *.

"(e) * * * and for such other and further relief as to the court may seem just and equitable in the premises."

The original decree was entered July 21, 1945, and granted the plaintiff judgment in "the sum of $125,000.00 with interest thereon at the rate of 7% per annum from June 19, 1944, until paid."

After appellants upon the first appeal had brought the case to this court, the present appellants did not cross-appeal, nor did they contend upon appeal that they should be awarded 10 per cent interest upon the overdue notes. After the announcement of our decision there was a motion for a rehearing and still later came a motion to correct the mandate. In connection with those proceedings, the present appellants advanced no claim that they were entitled to 10 per cent interest. We believe that the contention, which constitutes the basis of this assignment of error, has become res adjudicata and that the law of the case, which we have already mentioned, is controlling of this assignment of error.

The foregoing disposes of all contentions. The decree of the Circuit Court is affirmed.