Argued January 3, affirmed March 12, 1952

# FINN ET AL. *v.* SPOKANE, PORTLAND & SEATTLE RAILWAY CO.

### 241 P. 2d 876

*Manley B. Strayer,* of Portland, argued the cause for appellant. With him on the briefs were John C. Beatty, Jr., and Hart, Spencer, McCulloch, Rockwood and Davies, all of Portland.

No appearance for respondents.

WARNER, J.

This is the second time this matter has been before this court. On the former appeal we reversed a judgment of involuntary nonsuit. See *Finn et al. v. Spokane, P. & S. Ry. Co.,* 189 Or 126, 214 P2d 354, 218 P2d 720.

This action arises from a collision between the automobile of the plaintiff Finn and defendant's train which was then on a grade crossing at the intersection of Northwest 22nd avenue and Vaughn street in Portland, Oregon. It occurred about 6:20 a. m. on January 17, 1947. Plaintiff Finn seeks to recover damages for injuries to his person and property. The plaintiff insurance company paid costs incident to the repair of Finn's automobile. The second trial resulted in a verdict in favor of the plaintiffs. From the ensuing judgment, the defendant appeals.

On this appeal, counsel for plaintiffs filed no brief and did not participate in the oral argument.

The defendant's first assignment of error is predicated upon the circuit court's failure to allow its motion for a directed verdict. This motion rests upon two grounds, first, failure to prove any negligence on the part of defendant; second, proof showing con-

tributory negligence on the part of Finn proximately contributing to the accident and precluding recovery.

At the point of the intersection of Northwest 22nd avenue and Vaughn street in Portland, the defendant maintains a railroad track running north and south along 22nd avenue and intersecting with Vaughn street at right angles. At the southeast corner of the intersection of these streets, the city of Portland has a traffic signal which flashes yellow on Vaughn street and red on 22nd avenue. Vaughn street is straight for a considerable distance on each side of the crossing. The plaintiff Finn for a year and a half or more had been in the habit of regularly traveling from his home on Northwest St. Helens road in northwest Portland to his place of work at the Southern Pacific Company shops in the southeastern part of the city over a route which included crossing the intersection where the accident occurred. On the morning of January 17, 1947, the plaintiff Finn had started on his usual route to his place of work, traveling easterly along Vaughn street at a speed of 15 or 20 miles per hour. His headlights were on "low beam." It was cold to the point of freezing, and the windows of his automobile were closed. There was no other traffic on Vaughn street at that time. The train consisted of eight cars and a diesel engine. The engine and a box car, going south on 22nd avenue, had crossed the intersection before stopping. A gondola car car immediately behind the box car blocked the crossing. There was no flagman, flare or other signal warning the traveling public of the presence of the train. It was stipulated that Finn's car struck the gondola car.

Preliminary to what is hereinafter said, it might be well to here recall that in our former opinion we held, among other things: (1) that a railroad has

the right of precedence at a crossing and that it is not negligence per se to stop a train on the crossing for a reasonable length of time for some necessary purpose (189 Or 132); (2) that under ordinary conditions a train on a railroad crossing is adequate notice of its presence and that there is no duty to use flagmen, flares or other signals to warn a motorist of any danger, it being assumed that he will exercise due care to avoid injury (189 Or 133); (3) that if, however, the crossing under then-existing conditions was unusually hazardous or dangerous, it became the duty of the railroad to use reasonable precautions to warn a motorist that a train blocked the highway; and the degree of care must be commensurate with the danger involved but what would constitute such reasonable care under the circumstances, that is, the presence of flagmen, the use of flares or other signals, would be a question of fact for the jury to determine (189 Or 133); and (4) that a crossing is extrahazardous and dangerous when a railroad company through its operative employees can, under existing conditions, reasonably anticipate that a motorist exercising due care in driving an automobile and having standard lights will, nevertheless, be likely to be injured by reason of a train blocking a highway crossing (189 Or 134).

■ The foregoing conclusions, as well as any others found in our former opinion, are the rules of this case so far as this appeal is concerned and guide posts governing our judgments herein. *Portland T. & S. Bank v. Lincoln Realty,* 187 Or 443, 451, 211 P2d 736, and cases therein cited.

The charges of negligence against the defendant which were submitted to the jury on the second trial were (1) permitting the train to remain standing on the intersection and across the whole thereof; (2) fail-

ing to place a signal on Vaughn street to caution motorists of the presence of the train; and (3) failing to furnish a watchman or signalman on Vaughn street to give notice to motorists of the presence of the train.

■ It is a well-established rule that in the determination of the questions raised by a motion for directed verdict, they must be resolved upon a consideration of all the evidence and the reasonable inferences derivable from it in the light most favorable to plaintiffs. In the process of such determination, a plaintiff is entitled to the benefit not only of his testimony but also of any evidence favorable to him introduced by the defendant. *Doty v. Southern Pacific Co.,* 186 Or 308, 313, 207 P2d 131.

If plaintiffs proved negligence in any one of the particulars pleaded and submitted to the jury, appellant must fail on his first assignment of error. We reverse the order of their presentation and give attention to the last two charges of negligence relating to the absence of sufficient signals as a caution to oncoming motorists. These are related in character and are necessarily premised upon the proposition that extrahazardous conditions prevailed at the crossing at the time of the accident which warranted the precautionary signals and devices which plaintiffs claim were not there.

■ In short, our query to the point is: Was there evidence sufficient to warrant the jury in finding that the conditions at the crossing at the time of the accident were such that the railroad employees should have reasonably anticipated that a motorist exercising due care while driving an automobile would, nevertheless, be likely to be injured by reason of the train's obstruction of the highway? *Finn et al. v. Spokane, P. & S. Ry. Co.,* supra, at page 134. If the evidence of the then

conditions was such as to justify precautionary measures and if there is further evidence that they were not taken or were ineffectively or insufficiently taken, then the verdict is invulnerable to appellant's motion, unless the railroad can further demonstrate that the plaintiff Finn was guilty of contributory negligence. If, however, there was no showing of conditions warranting an inference of extrahazardous character at the time of the impact between Finn's automobile and the gondola car on defendant's train, then plaintiffs must fail because the law is settled that in the absence of extrahazardous conditions, the presence of the train at the crossing point is of itself sufficient notice and warning of danger to relieve the railroad of the duty to employ flagmen, flares or other precautionary devices. *Finn et al. v. Spokane, P. & S. Ry. Co.*, supra, at page 133; *Case v. N. Pacific Terminal Co.*, 176 Or 643, 648, 160 P2d 313.

■■ The evidence discloses that the accident happened on an arterial highway at 6:20 a. m. on a January morning in the winter season when darkness prevailed and the atmosphere was overhung with a low, misty fog reducing visibility to 25 or 30 feet; that Vaughn street was surfaced with a blacktop pavement which was wet at the time with a slick and icy surface because of the existent low temperature and, as we said in the first case (189 Or 136), "The black-top pavement, accentuated by the fog and the dark background undoubtedly did much to absorb the lights of the automobile and made it extremely difficult to see the obstruction in the highway." The evidence further discloses that notwithstanding the frequency of Finn's crossing of the spur track enroute from his home to his work, over a period of one and a half or two years he had never seen a train at the crossing. The train

itself made no sound and here again, as we pointed out in the earlier case, was a factor heightening the hazards to be taken into consideration (189 Or 136). Moreover, there were no audible warning signals, such as train bells or whistles, and no signs of any kind indicating a crossing. A further item was the act of the railroad in placing a black or dark colored gondola car on the crossing so as to completely cover it and in such a position that it blocked, according to Finn, his view of the city traffic light on the southeast corner of the intersection, that is, on the side of the track opposite to Finn's position. As shown by Finn's testimony, the train was not moving at the time it was hit by his automobile, a factor which, as said in our first opinion (189 Or 136), made it "more difficult to see such an object standing on a crossing in dense fog than it would be if the train were moving." Last but not least in importance is the defendant's own admission that the instant intersection was regarded by it as sufficiently dangerous at all times to warrant, as a matter of course, bringing its trains to a stop before crossing Vaughn street and customarily sending out one of the members of the train crew to explore as to the existence of apparent hazards before crossing. This it had also done on the day of the accident for which plaintiffs seek recovery.

The foregoing summary of evidence bearing upon conditions which might warrant a jury, if believed by them, in finding that the crossing at the intersection was extrahazardous is in part admitted by the defendant and in part earnestly controverted by it. It is, however, of a character from which the jury might properly infer that such an extrahazardous condition prevailed at the Vaughn street railroad crossing in the early morning of January 17, 1947, that it imposed

upon the railroad a duty to place signals or a signalman at the intersection to warn approaching motorists of the presence of the train at that hour of the day whether or not the train was moving or standing still. If the jury reached that conclusion, they were further justified in finding the defendant railroad guilty of negligence for its failure to furnish such cautionary signals or signalmen.

There can hardly be a serious question under our holding in the previous case that the evidence on the second trial was sufficient to make out a submissible case of negligence on the part of the defendant.

We again repeat what we said in our first opinion, i. e., that as a matter of law, it cannot be held that the plaintiff driver was guilty of contributory negligence (189 Or 142). The defendant seeks to circumvent the effect of that conclusion by an earnest argument inviting us to reconsider what we said in the earlier opinion respecting the inapplicability of the so-called "range of vision rule." In essence, we previously held that the existence of an extrahazardous crossing precludes the application of the range of vision rule (189 Or 137) and that what, in fact, constitutes an extrahazardous crossing depends upon the factual situation of each case (189 Or 134). The defendant railroad would have us temper that holding and make the range of vision rule applicable in extrahazardous-crossing cases where the injured motorist had previous knowledge of the presence of such a place of known danger. Such a departure from the rule as laid down in the previous opinion would necessarily give a modicum of support to its present contention that the plaintiff Finn was guilty of contributory negligence. Cogent as defendant's argument might prove to be, if advanced in a different case, we cannot give it heed here, being

constrained as we are to abide by our former holding on that subject. What we said on the first appeal is now the law of the case on the second appeal in the same matter. *Portland T. & S. Bank v. Lincoln Realty,* supra.

■ The defendant urges that from the time it became apparent that there might be a collision, there was no opportunity for the trainmen to have posted a flagman or signals at the crossing. This is premised upon defendant's assumption that "the evidence conclusively shows that the train * * * stopped because of an emergency created by the impending collision with plaintiff's automobile." Whether the train had stopped some time prior to the moment Finn first saw it or whether it was moving at that time and stopped because, as stated in appellant's brief, "The engineer * * * [deceased at the time of the first trial] was looking back and, *evidently* because he saw the headlights of Mr. Finn's car entering the intersection * * *, applied the emergency brakes on the train," was a question properly submitted to the jury. (Italics ours.)

Assuming that the train was moving immediately prior to the moment of the collision, as defendant represents, it was necessarily moving very slowly because, if the jury believed the testimony of defendant's train conductor, the train came to a stop before proceeding across Vaughn street and "The head man [brakeman] proceeded ahead of the engine and he looked, and as we went across the crossing he gets back on the engine." The "head man," called as a witness for defendant, testified:

"Q (By Mr. Beatty) Mr. Scott [the train conductor] has testified, Mr. Chinn, that the train stopped at the entrance to Vaughn Street on 22nd Avenue. What did you do, if anything, at that intersection?

"A   I walked out—got off the engine after the stop, went out and observed both directions on Vaughn Street to see if there was any traffic that would harm us or stop us or give us any danger in making the crossing, and I saw no traffic within any reasonable distance to—for us not to proceed, so I gave a signal for the engineer to proceed.

"Q   And what did you then do?

"A   Got on the engine as it passed me at the intersection."

It is apparent that if the crossing were extra-hazardous, as found by the jury, enough of the conditions contributing to that situation were present when the train stopped at Vaughn street and when the "head man" went forward "to see if there was any traffic that would harm *us* or stop *us* or give *us* any danger in making the crossing * * *." (Italics ours.) The jury might well have inferred that that was the time for action; and the moment when the brakeman sallied forth into the street to determine if *it was dangerous for the train* to cross was the efficient "opportunity for the trainmen to have posted a flagman or signals at the crossing" and to then have taken into account that in a few seconds following, the cars of the moving train, by reason of their size and color, might heighten the existing hazards by obstructing a motorist's view of the flashing traffic light situated at the southeast corner of the intersection.

■ The defendant assigns as error the court's refusal to give appellant's requested instruction reading:

"Plaintiffs have charged that defendant was negligent in permitting its train to stand upon the crossing. I instruct you that there is no evidence that this train was standing upon the crossing for an unreasonable time or unnecessary purpose, and accordingly this allegation of negligence is withdrawn from your consideration."

The purpose of this requested instruction was to remove from the jury's consideration plaintiffs' first charge of negligence, which was that the defendant was negligent "In permitting said train to remain standing on said intersection and across the whole thereof." The charge obviously is addressed to a point of time immediately preceding the collision of Finn's automobile with the train.

We think it was error to refuse to instruct the jury that there was no evidence that the train was standing upon the crossing for an unreasonable time or for an unnecessary purpose. It is evident that plaintiffs must have given an erroneous construction to that part of our earlier opinion which reads, "* * * It is hardly reasonable to assume that the plaintiff driver would know how long the train had been on the crossing prior to the accident or the reason for blocking the highway." (189 Or 132). Apparently, they construed it to mean that proof of the stopping of the train on the crossing ipso facto cast upon the defendant the burden of proving that it had not stood upon the crossing for an unreasonable length of time or for an unnecessary purpose. Such was not the intended purport of that language. The only evidence upon that question coming from the plaintiff Finn was that he saw the train on the crossing when he was about 15 or 20 feet from the track and was traveling between 15 and 20 miles per hour, and that his car was not dragged sidewise after it struck the train. Beyond this plaintiffs did not go as was their duty if they would sufficiently prove their first charge of negligence. The evidence on behalf of the defendant was that the train was proceeding over the crossing at a speed of 3 to 5 miles per hour, that an emergency stop was made because of the approach of plaintiff Finn's automobile, and that the

train was still moving at the time of the collision. Finn's evidence does not show that the train was on the crossing for more than a fraction of a second before the collision; while on the other hand, if the evidence on behalf of the defendant be rejected, there is no evidence in the case as to how long the train was standing on the crossing, or for what purpose. Other evidence in the record establishes beyond doubt that the train had been stopped at the crossing and, after sending out a flagman, had resumed its movement, and that there was no occasion whatever for it to stop again, other than the approach of Finn's automobile. We believe, however, that the issue was not an appreciable factor influencing the verdict of the jury; and since this case has once before been to this court and the amount of the judgment is small, the judgment is affirmed under the authority given us by art. VII, § 3, Constitution of Oregon.

Our conclusions render it unnecessary to consider the other assignments of error.

Affirmed.