Argued and submitted October 15, 2004, reversed and remanded April 13, 2005

HAYES OYSTER CO.,
an Oregon corporation,
*Appellant,*

*v.*

Frank D. DULCICH,
an individual;
Pacific Seafood Co., Inc.,
an Oregon corporation;
and Pacific Oyster Co.,
an Oregon corporation,
*Defendants,*

*and*

DULCICH, INC.,
an Oregon corporation,
*Respondent.*

952016; A119988

110 P3d 615

Richard S. Pope argued the case for appellant. With him on the briefs was Newcomb, Sabin, Schwartz, & Landsverk LLP.

William H. Walters argued the cause for respondent. With him on the brief were John F. Neupert, Kieran J. Curley, and Miller Nash LLP.

Before Haselton, Presiding Judge, and Linder, Judge, and Deits, Judge pro tempore.

HASELTON, P. J.

**HASELTON, P. J.**

This is an action for conversion, in which plaintiff seeks compensatory and punitive damages. We previously reversed and remanded for a trial on plaintiff's claim against defendant Dulcich, Inc., *Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 12 P3d 507 (2000) ("*Hayes Oyster I*"). Plaintiff now appeals again, challenging a directed verdict in favor of defendant Dulcich, Inc., and various related and predicate evidentiary rulings. For the reasons set forth below, we reverse and remand.

In 1995, plaintiff brought this action, alleging various claims, against defendant Dulcich, Inc., its controlling shareholder, Frank Dulcich, and its subsidiaries Pacific Seafood, Inc., and Pacific Oyster Co. In *Hayes Oyster I*, we affirmed a judgment in favor of plaintiff against defendants Frank Dulcich, Pacific Sea Food, Inc., and Pacific Oyster Co. *Id.* at 223-37. However, we reversed and remanded the trial court's entry of summary judgment in favor of defendant Dulcich, Inc., on plaintiff's claim for conversion. *Id.* at 237-38.

In *Hayes Oyster I*, we summarized the evidence that was presented to the jury on the conversion claims against Frank Dulcich, Pacific Seafood, Inc., and Pacific Oyster Co. as follows:

"Beginning in 1947, Hayes Oyster Co. leased land from the Port of Garibaldi on which Hayes' oyster cannery was located. Oyster shell is a by-product of oyster canning, and, for years, the Port had given Hayes permission to store its oyster shell on public land next to the cannery. The old shell is used to seed new oysters. Over the years, the shell pile next to Hayes' oyster cannery grew. At trial, Hayes' expert testified that by 1991 the shell pile had grown to almost 310,000 cubic feet, or 329,627 bags of oyster shell, although the parties disagree about how much of the shell Hayes had placed there.

"By the 1990s, Sam Hayes, the head of the business, had grown old, and Hayes' business was languishing. While Hayes' business was in decline, Dulcich's business was on the rise. As part of his business expansion, Frank Dulcich wanted to enter the Tillamook Bay oyster business. He tried to buy Hayes' assets, but he and Sam Hayes could not

agree on a price. At some point, Dulcich learned that Hayes was not making timely payments on 300 acres of oyster lands that Hayes had bought from Bob Olson. In 1991, Dulcich had his attorneys draw up a new agreement between Sam Hayes and Bob Olson. The new agreement reduced Hayes' monthly payments but made it easier to foreclose if Hayes defaulted. Hayes signed the new agreement, and Olson assigned the agreement to Dulcich. When Hayes failed to make a payment, Dulcich declared a default and foreclosed. Dulcich and Hayes settled the foreclosure action and entered into a release.

"In June 1991, the Port of Garibaldi notified Hayes that it was terminating the lease for Hayes' oyster cannery because Hayes had failed to pay real property taxes. Hayes paid those taxes, and in August 1991 the Port and Hayes entered into a new lease. That lease does not include a promise that the Port would dredge a channel to provide access to Hayes' cannery and shell pile. Before the new lease was signed, the Port Commissioners stated in the minutes of one of their meetings that they believed that it would be impossible to provide water access to Hayes' cannery.

"In November 1991, the Port manager wrote Hayes and asked that two sheds and other equipment be removed from the Port's land. That letter did not specifically mention the shell pile. Other letters followed. In August 1992, Hayes protested when Dulcich began to take oyster shell from the pile. Dulcich did not respond directly, but, in September 1992, the Port sent a letter to Sam Hayes, telling him that the Port considered the buildings and property that had not been removed from the Port's land to be 'abandoned property' that was 'now [the] property of the Port of Garibaldi, the land owner.' That letter specifically identified oyster shell as part of the property that had been abandoned. Soon afterwards, the Port gave Dulcich permission to remove the oyster shell. In June 1993, the Port terminated its latest lease with Hayes because Hayes had failed to maintain the cannery building and to provide insurance coverage.

"\* \* \* \* \*

"\* \* \* The jury returned a verdict in Hayes' favor finding that each of the three defendants, Frank Dulcich, Pacific Oyster, and Pacific Sea Food, had converted Hayes' oyster shell and that the converted shell was worth $45,400. The

jury also found that each defendant had taken Hayes' shell 'with [the] belief that it had permission to do so' or that each defendant 'otherwise was entitled to take the shell.' The jury did not award Hayes any punitive damages."

170 Or App at 221-23 (footnotes omitted; brackets in original).

In the previous appeal, plaintiff contended in part that the trial court had erroneously excluded certain evidence and had erroneously granted summary judgment to Dulcich, Inc. As to several of the evidentiary rulings, we held that the trial court's rulings had been preliminary rather than final and, consequently, were not preserved for our review. *Id.* at 233-34. However, we agreed with plaintiff that the trial court had erred in granting summary judgment for Dulcich, Inc. In particular, we noted that "Hayes offered evidence from which the jury reasonably could infer that Dulcich, Inc., was more than a passive spectator," *id.* at 237, including evidence that

> "would permit a reasonable juror to conclude that Dulcich, Inc., acted in accord with the other defendants in acquiring Hayes' operation, including its shell pile. A juror could reasonably infer from the evidence that Dulcich, Inc., was acting in concert with the other defendants who took Hayes' shell."

*Id.* at 238. We therefore reversed and remanded as to plaintiff's conversion claim against Dulcich, Inc. *Id.*

On remand, defendant Dulcich, Inc., moved *in limine* to exclude any new evidence offered by plaintiff concerning the amount of shell that had been converted. Defendant contended that the doctrine of issue preclusion barred plaintiff from presenting new evidence on that matter that would, at least potentially, permit a jury to return a verdict against Dulcich, Inc., that would be inconsistent with the jury verdict against the other three defendants in the 1996 trial. The trial court granted defendant's motion, indicating that the quantity of shell that was taken had been "resolved in the first case."

As a result of that ruling, which precluded plaintiff from proving conversion, and concomitant compensatory

damages, in excess of those found in the original trial, the trial court excluded all evidence that plaintiff had obtained since the 1996 trial, including through discovery following remand, that allegedly showed more extensive conversion by defendant. The trial court also rendered other rulings, excluding other items of evidence that plaintiff sought to admit, which we address in detail below. 199 Or App at 55-57.

After plaintiff presented its case-in-chief (primarily in the form of an extensive offer of proof necessitated by the court's limitation on what evidence was admissible), Dulcich, Inc., sought a directed verdict on punitive damages, asserting that plaintiff was precluded from relitigating punitive damages because the 1996 jury had not awarded punitive damages against the other three defendants. The trial court again ruled in favor of Dulcich, Inc., based on issue preclusion. Thus, the net effect of the trial court's issue preclusion-related rulings and evidentiary rulings was that (1) Dulcich, Inc., was liable for exactly the same compensatory damages as had been awarded against the other defendants in the original trial; and (2) Dulcich, Inc., was not liable for punitive damages.

On appeal, plaintiff challenges each of the rulings described above. We begin with the two overarching rulings predicated on issue preclusion, *viz.*, the allowance of the motion *in limine* and the allowance of the directed verdict motion against punitive damages. Plaintiff asserts on appeal that issue preclusion does not apply here for several reasons, including (1) issue preclusion is inapposite to proceedings on remand within the same case; and (2) in all events, the requisites for issue preclusion were not satisfied here because later-obtained evidence that plaintiff sought to present was not available at the time of the original trial. Defendant responds that plaintiff is incorrect as to both of those propositions and that, in all events, the doctrine of "law of the case" precluded plaintiff from presenting either evidence of conversion beyond that established in the 1996 trial or evidence in support of an award of punitive damages. As explained below, we agree with plaintiff that, in the circumstances presented here, neither issue preclusion nor "law of the case" principles (1) barred plaintiff from presenting additional,

later-obtained evidence pertaining to Dulcich, Inc.'s, compensatory or punitive liability; or (2) concomitantly barred the jury from returning a verdict for compensatory or punitive damages against Dulcich, Inc., that differed from the verdict as to the other defendants in the 1996 trial.

██  In *Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990), the court described the doctrine of issue preclusion as follows:

> "The issue preclusion branch of preclusion by former adjudication, formerly called collateral estoppel, precludes future litigation on a subject issue only if the issue was 'actually litigated and determined' in a setting where 'its determination was essential to' the final decision reached. *North Clackamas School Dist. v. White*, 305 Or 48, 53, 750 P2d 485, *modified* 305 Or 468, 752 P2d 1210 (1988); Restatement (Second) of Judgments § 17(3) (1982); *see also id.* at § 27. This court has previously explained issue preclusion as follows:
>
>> " 'If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment.' *North Clackamas School Dist. v. White, supra*, 305 Or at 53.
>
> "Issue preclusion applies to an issue of either fact or law. Restatement (Second) of Judgments § 27 ('[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive'). *Compare Heller v. Ebb Auto Co.*, 308 Or 1, 6, 774 P2d 1082 (1989) ('[w]ithout any reason to think that the referee was aware of that legal issue, no decision on that issue can be implied from the denial of compensation') *with* § 27."

(Footnote omitted.)

██  The court further formulated the criteria for issue preclusion in *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993):

> "1.  The issue in the two proceedings is identical.
>
> "2.  The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect."

(Citations omitted.)

■ Defendant asserts that, because our prior reversal of summary judgment for defendant was on the ground that plaintiff presented sufficient evidence that a jury could conclude that it "acted in accord" or "in concert" with the other defendants, 170 Or App at 238, the only relevant and admissible evidence against defendant must be the same evidence on which the liability of the other defendants for conversion was based, as established in the 1996 trial. Thus, emphasizing the "in concert" language, defendant reasons that (1) because the jury found that the other three defendants converted a specific amount of shell and were liable for a specific amount of compensatory damages, defendant's compensatory liability cannot exceed the liability of the other three defendants; and (2) because the 1996 jury determined that the other three defendants were not liable for punitive damages, defendant cannot be liable either.

■ There are several problems with defendant's approach. First, the 1996 trial was not a "prior proceeding" as we have used that term in our decisions addressing issue preclusion. Rather, that trial was an earlier phase of the same case. As plaintiff points out, we have held that issue preclusion does not apply to claims within the same case. *See, e.g.*, *Westwood Corp. v. Bowen*, 108 Or App 310, 315, 815 P2d 1282 (1991), *rev dismissed*, 312 Or 589 (1992) (issue preclusion and claim preclusion do not apply "from one claim to another in a single lawsuit"); *see also Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 631-32, 50 P3d 238, *rev den*, 335 Or 42 (2002) ("issue preclusion does not bar relitigation of an issue common to separate claims *when those claims are litigated as part of a single action or lawsuit*" (emphasis in original)); *cf. Talbert v. Farmers Ins. Exchange*, 166 Or App 599, 603, 5 P3d 610, *rev den*, 330 Or 553 (2000) (in general,

prejudicial trial court error requires a remand for trial on all factual issues).

Second, issue preclusion requires that the "party sought to be precluded has had a full and fair opportunity to be heard *on that issue.*" *Nelson*, 318 Or at 104 (emphasis added). In determining what constitutes a "full and fair opportunity to be heard" for purposes of issue preclusion, the Oregon Supreme Court has recognized the possibility that "the existence of newly discovered or crucial evidence that was not available to the litigant at the first trial would provide a basis for denying preclusion where it appears the evidence would have a significant effect on the outcome." *State Farm v. Century Home*, 275 Or 97, 108-09, 550 P2d 1185 (1976) (citing *Restatement (Second) of Judgments* § 88(7) (Tentative Draft No. 2, 1975)).[1]

Here, the relevant issue was, and is, defendant's compensatory and punitive liability for conversion. By erroneously granting summary judgment in defendant's favor before the 1996 trial, the trial court effectively removed defendant from the litigation. That is, plaintiff was no longer in the position to obtain discovery from this defendant and had no reason to develop evidence at trial concerning this defendant's liability.

Conversely, after our remand in *Hayes Oyster I*, plaintiff was able to seek and obtain additional discovery from defendant. From that evidence, viewed in the light most favorable to plaintiff, a trier of fact could find that the amount of shell that defendant had converted greatly exceeded the loss found by the 1996 jury. Because plaintiff did not have a "full and fair opportunity" to obtain and present that evidence at the 1996 trial and because, if credited, that evidence "would have [had] a significant effect on the outcome," *State Farm*, 275 Or at 108, the trial court erred in concluding that issue preclusion compelled the exclusion of that evidence.

---

[1] Those provisions later were set forth at *Restatement (Second) of Judgments* § 29 (1982).

Besides new evidence of the extent of conversion, plaintiff also sought to present evidence pertaining to defendant's liability for punitive damages, including evidence of defendant's motive for conversion. As noted, the trial court determined that issue preclusion barred the presentation of that evidence and compelled a directed verdict in defendant's favor. Again, the court erred. In addition to the reasons previously noted, issue preclusion did not apply to defendant's liability for punitive damages because the issue in the 1996 trial and the 2002 trial following remand were not "identical" and because the issue of defendant's punitive liability was not "actually litigated and * * * essential to a final decision on the merits" in the 1996 trial. *Nelson*, 318 Or at 104.

Punitive damages concern the actions and motivations of specific parties; consequently, a finding that one defendant is not liable for punitive damages does nothing to establish that a different defendant should not be held liable. That is true even in situations in which the defendants were indisputably acting in concert with one another. For example, one defendant's motivation or intent may be significantly different from another, or one defendant might have greater knowledge of the harm being inflicted on a plaintiff than another, or one defendant might have undertaken to commit a tort maliciously while another did so negligently. In sum, nothing about the 1996 jury's conclusion that other defendants were not liable for punitive damages precludes a determination as to whether this defendant should be held liable for punitive damages.[2]

---

[2] Defendant suggests that our decision in *Talbert v. Farmers Ins. Exchange*, 166 Or App 599, 5 P3d 610, *rev den*, 330 Or 533 (2000), supports its contention that punitive damages cannot be "retried" because of the 1996 jury verdict. However, *Talbert* has no such application here.

In *Talbert*, the plaintiff pleaded a claim for fraud, seeking compensatory and punitive damages. After the trial court allowed the defendants' motion for a directed verdict as to punitive damages, the court instructed the jury on the fraud claim, "inform[ing] the jury that either reckless or intentional fraud would suffice," and the jury returned a verdict for the plaintiff. 166 Or App at 602. Thereafter, while the appeal was pending, the plaintiff had executed a satisfaction of judgment on the fraud claim. *Id.* On appeal, the plaintiff argued that the trial court had erred in dismissing the prayer for punitive damages, and defendants responded that the remedy that the plaintiff sought—retrial—was no longer available, given that the judgment on the fraud claim had been satisfied. We rejected the plaintiff's suggestion that the case could be remanded for a new trial on the punitive damages alone.

▮▮▮▮ We turn, then, to defendant's alternative, "law of the case"-based argument in support of affirmance. We conclude that that doctrine does not assist defendant. The Oregon Supreme Court has described the "law of the case" doctrine as follows:

> " 'It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.' "

*State v. Pratt*, 316 Or 561, 569, 853 P2d 827, *cert den*, 510 US 969 (1993) (quoting *Simmons v. Wash. F.N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932)). "The law of the case doctrine is essentially one of judicial economy and judicial discretion." *State v. Metz*, 162 Or App 448, 454, 986 P2d 714 (1999), *rev den*, 330 Or 331 (2000). The doctrine does not apply to "every statement about the law or the facts that the court happens to venture in the course of rendering its decisions." *Blanchard v. Kaiser Foundation Health Plan*, 136 Or App 466, 470, 901 P2d 943, *rev den*, 322 Or 362 (1995). Rather, the "law of the case" doctrine applies to the portions of a prior appellate opinion that were necessary "to the disposition of the appeal." *Id.*; *cf. McAlpine v. Multnomah County*, 166 Or App 472, 478-79, 999 P2d 552 (2000), *rev den*, 336 Or 60 (2003) ("law of the case" doctrine did not establish

---

We noted that the jury could have returned its verdict for compensatory damages based on a determination that the defendant had engaged in reckless conduct only and, were that the case, it would be error to permit an award of punitive damages. *Id.* at 604. Thus, in *Talbert*, the plaintiff could not retry the fraud claim against the defendants because the judgment had been satisfied, and the plaintiff could not try the claims for punitive damages alone because he could not establish that the jury's award of compensatory damages was consistent with an award of punitive damages. *Id.* at 606.

In sum, *Talbert* did not concern issue preclusion. Rather, *Talbert* concerned a situation in which the same defendants were potentially faced with separate trials on compensatory and punitive damages for the same tort, where the jury that awarded compensatory damages could have done so on a basis that *precluded* an award for punitive damages against the same defendants for the same tort. Here, by contrast, defendant was not a party to the earlier trial, and that trial did not establish defendant's liability (or lack thereof) for conversion.

insufficiency of complaint against defendant who was not a party to an earlier appeal in the case).

■ Thus, "law of the case" is a doctrine that should be invoked to preclude parties from revisiting issues that already have been fully considered by an appellate court in the same proceeding. Here, our previous decision on appeal, insofar as it concerned *this* defendant, simply held that the trial court had erroneously granted this defendant summary judgment. Consequently, we did not make any determination as to defendant's liability in the course of the previous appeal; rather, we ruled that plaintiff had presented sufficient evidence of defendant's liability to avoid summary judgment. Nothing more. Nothing about that ruling purported to determine or limit the extent of *this* defendant's liability for compensatory and punitive damages.

Conversely, the fact that the previous appeal also involved affirmance of verdicts against other defendants does not implicate the law of the case doctrine because those verdicts did not concern this defendant. *See generally Portland T. & S. Bank v. Lincoln Realty*, 187 Or 443, 452, 211 P2d 736 (1949) (law of the case doctrine generally is not applicable to pure questions of fact). In sum, the "ruling or decision" made in our previous appeal concerning the jury's verdict against other defendants established no "law" in regard to this defendant. "Law of the case" is inapposite.

We thus conclude that the trial court erred in granting defendant's motion *in limine*, to exclude evidence of defendant's participation in conversion of plaintiff's oyster shells beyond that adduced at the 1996 trial. For similar reasons, we also conclude that the trial court erred in directing a verdict for defendant with respect to liability for punitive damages.

Given our disposition of those two assignments of error, it is not, strictly speaking, necessary for us to address plaintiff's assignments of error regarding the trial court's exclusion of specific items of evidence. To the extent that those rulings were based on the trial court's misapplication of issue preclusion principles as discussed above, we merely note that the trial court will need to reassess the relevance of the proffered evidence. However, because a number of the

specific evidentiary issues are likely to arise on remand, we address them here for the sake of judicial economy.

■   Plaintiff asserts that the trial court erred in excluding evidence concerning Dulcich, Inc.'s, unsuccessful attempts to purchase Hayes Oyster Co. in 1990. In particular, plaintiff asserts that the trial court should not have excluded evidence of a statement by Dulcich, Inc.'s, acquisitions advisor, expressing Dulcich, Inc.'s, desire to acquire Hayes Oyster at a depressed price. The trial court excluded that evidence on two grounds other than issue preclusion: (1) it was barred by a 1992 settlement agreement between Hayes Oyster and all of the defendants; and (2) its probative value was substantially outweighed by "the collateral consequences of getting into a 1990 transaction and why it failed." OEC 403. We need not determine whether the evidence was barred by the 1992 settlement agreement because we agree that, due to the marginal relevance of the evidence to plaintiff's conversion claim, the trial court did not abuse its discretion in excluding it based on OEC 403.

■   Plaintiff also asserts that the trial court erred in excluding statements and correspondence of the manager of the Port of Garibaldi in 1992 and 1993 concerning the Port's termination of Hayes Oyster's lease of the cannery and Dulcich, Inc.'s, subsequent lease of the cannery. The disputed evidence has at least some tendency to show that Frank Dulcich, on behalf of Dulcich, Inc., worked in conjunction with the port manager to have Hayes Oyster's lease terminated. The trial court apparently excluded the evidence on the ground of issue preclusion and because it did not "think the Port's bad faith necessarily carries over to Dulcich, Inc.'s motives[.]"

To the extent that the trial court excluded the evidence on grounds of relevance, we disagree that it did not meet the threshold standard for relevance. The threshold of "relevance" under OEC 401 is undemanding: The evidence merely needs to have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As the abbreviated statement of the facts above makes clear, *see* 199 Or App at 45-47, the core of the

present dispute concerns the business relationships among Hayes Oyster, the Port of Garibaldi, and defendants. The disputed evidence concerned the business transactions between those entities near the time the alleged conversion of plaintiff's shell began. It is the jury, not the trial court, that must ultimately decide to what extent the Port's "bad faith" might "carr[y] over to Dulcich Inc.'s motives."

■ Plaintiff next argues that the trial court erred in excluding evidence that Frank Dulcich, in meetings of managers of Dulcich, Inc., beginning in 1997, encouraged employees to "use and abuse" competitors and "kill our allies last." The trial court excluded the statements on the ground that they were made after the conversion of plaintiff's shell took place. As noted above, the conversion at issue occurred from 1992 to 1994. We agree with the trial court that, at least in the absence of any evidence demonstrating that the alleged corporate "policy" was in place when the conversion of the shell took place, the existence of such a policy in 1997 and later was not relevant to plaintiff's conversion claim.

■ Plaintiff also argues that the trial court erred in excluding evidence of what plaintiff claims was an offer by Frank Dulcich in 1999 to pay an employee $5,000 if he made Hayes Oyster's president "go away." The trial court ruled that the evidence was inadmissible on the ground that it was too remote in time from the conversion of the shell, and that, because the evidence could be viewed in any number of ways—*e.g.*, the statement could have referred to settlement negotiations concerning the present litigation—it could distract the jury. The court therefore excluded the evidence pursuant to OEC 403 on the ground that the potential for prejudice outweighed any relevance. Given the ambiguity of the proffered evidence, we conclude that the trial court did not abuse its discretion in excluding the evidence pursuant to OEC 403.

■ Finally, plaintiff asserts that the trial court erred in ruling, with respect to punitive damages, that the only evidence that the jury could consider was evidence of defendant's net worth as of the original trial in 1996. The trial court ruled:

"The actions took place before 1995 and went to trial September 17, 1996. What defendant has done financially over five years later should not be the standard on a remand. I acknowledge the Oregon standard requires a defendant's financial status be evaluated as of the time of trial but with the amount of time which has elapsed, the time of the first trial is appropriate."

It is undisputed that the wealth of a defendant is a relevant consideration in assessing punitive damages. *See generally Pelton v. Gen. Motors Accept. Corp.*, 139 Or 198, 206-07, 7 P2d 263 (1932). Plaintiff cites numerous cases, including *Oberg v. Honda Motor Co.*, 320 Or 544, 888 P2d 8 (1995), *cert den*, 517 US 1219 (1996), for the proposition that the financial worth of a defendant at the time of trial is relevant to determining the amount of punitive damages for which a defendant should be held liable. Defendant cites no authority for the proposition that the net worth of a defendant at any time *other than* the date of that defendant's trial is the appropriate benchmark. Rather, in arguing that the trial court properly restricted plaintiff's proof to defendant's net worth as of 1996, when the other defendants went to trial, defendant simply offers the single, terse statement that, "[i]n the procedural posture of this case, the trial court did not err."

■ We disagree. "The evidence [of a defendant's financial worth] is relevant to allow the jury to assess punitive damages in an amount which would constitute a penalty in relation to defendant's wealth." *Hicks v. Lilly Enterprises*, 45 Or App 211, 217, 608 P2d 186 (1980). What "would constitute a penalty in relation to a defendant's wealth" is properly measured at the time the penalty is assessed, not at the time the tortious action occurred—much less at the time that other defendants' punitive liability (or here, lack thereof) was established. Given the absence of any reasoning supporting the trial court's decision to limit plaintiff's proof in this manner and the lack of any legal authority to support such a decision, we conclude that plaintiff is correct that it should be permitted to introduce evidence concerning defendant's financial condition at the time that *this* defendant's liability is tried.

In sum, the trial court erred in making various determinations in this case on remand based on the erroneous assumption that issue preclusion barred plaintiff from introducing evidence other than that introduced in plaintiff's 1996 trial against other defendants. The court further erred in excluding certain evidence of the business relationship between plaintiff, defendant, and the Port of Garibaldi on relevance grounds. Finally, the trial court erred in precluding plaintiff from presenting evidence of defendant's current financial condition that was relevant to its assertion that defendant should be liable for punitive damages.

Reversed and remanded.