Argued and submitted May 7, 2001, reversed and remanded for reconsideration May 1, 2002

In the Matter of the Compensation of
Pamela M. Christman, Claimant.

Pamela M. CHRISTMAN,
*Petitioner,*

*v.*

SAIF CORPORATION,
Charles H. Day Co., Inc.,
and Wells Fargo & Company,
*Respondents.*

99-04174, 99-01430; A109424

45 P3d 946

Reversed and remanded.

John M. Oswald argued the cause for petitioner. With him on the brief were Marianne Bottini and Bottini, Bottini & Oswald.

Jerome P. Larkin argued the cause for respondents SAIF Corporation and Charles H. Day Co., Inc.

Brad G. Garber and Meyers, Radler, Replogle, Roberts & Miller filed the brief for respondent Wells Fargo & Company.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Claimant seeks judicial review of a Workers' Compensation Board order that failed to assign responsibility for claimant's right carpal tunnel syndrome to either Wells Fargo & Company (Wells Fargo) or Charles H. Day Company, Inc. (Day), because the Board decided that an earlier employer, Protection One, which was not joined in the proceeding, was responsible. We conclude that the Board's decision is not supported by substantial reason and remand for reconsideration.

The material facts are not disputed. For the past 12 years, claimant has worked for three different employers, doing similar keyboarding work. Until late 1994, claimant worked for Protection One. A March 1994 Kaiser Permanente (Kaiser) medical chart note indicated that claimant complained about numb hands and swollen feet, but the chart note did not indicate any diagnosis or treatment. Claimant testified that, during that time period, she was suffering from water retention. From late 1994 or early 1995 to April 1996, claimant worked for Wells Fargo. A February 1995 Kaiser medical chart note, made while claimant was working at Wells Fargo, indicated that claimant was suffering from "pain in legs, hands, arms, tingling in hands," along with a diagnosis of obesity. The doctor gave claimant hand braces to wear at night. Claimant testified that her symptoms went away about a month after she began wearing the braces. A third, undated, Kaiser chart note reported a diagnosis of carpal tunnel syndrome. There is no indication when this chart note was made, except that it was before mid-1995, the last time claimant was treated at Kaiser.

Claimant went to work for Day in April 1996. In October 1998, claimant's carpal tunnel syndrome symptoms returned and she again sought medical treatment. Claimant saw Dr. Brett, and he diagnosed carpal tunnel syndrome:

"[Claimant] does have right carpel tunnel syndrome. * * * [I]t is mainly her work activities over the last 12 years in accounts receivable that have resulted in additional pathological worsening and now median nerve entrapment on

the right with ongoing symptoms of right carpal tunnel syndrome despite conservative care.

"She will require right carpel tunnel release and I do feel the major contributing factor to her current condition and need for treatment is her work activities in accounts receivable for [Day]."

In March 1999, Brett performed a carpal tunnel release.

Claimant was examined by Dr. Henry and Dr. Gardner. Henry concurred with Brett and diagnosed claimant with carpal tunnel syndrome due to a repetitive motion injury experienced on the job. Gardner, while agreeing that claimant had carpal tunnel syndrome, felt the condition was "idiopathic, with no specific cause being identifiable." In July 1999, SAIF, Day's insurer, sent additional information to both Henry and Gardner and requested that each complete a "check-the-box" opinion letter.[1] The additional included information was the three medical chart notes from Kaiser. However, the SAIF letter grouped together the March 14, 1994, chart note with the undated chart note. The letter explained that "SAIF has recently received some 1994 and 1995 chart notes from Kaiser Permanente which document complaints of numbness and tingling in [claimant's] hands. *The March 14, 1994 note has a notation of '[carpal tunnel syndrome]' in the middle of page 2.*" (Emphasis added.) Based on the information provided, both Henry and Gardner checked "Yes" to the question "Is it medically probable that the condition treated on March 14, 1994 and February 7, 1995 was carpal tunnel syndrome?"

Both Day and Wells Fargo denied compensability and responsibility. The administrative law judge (ALJ) held the claim compensable and assigned responsibility to Day under the last injurious exposure rule. On review to the Board, the only contested issue was responsibility. Based on the "check-the-box" reports of Gardner and Henry, the Board found the onset of disability, for purposes of the last injurious exposure rule, to be March 1994, when claimant complained

---

[1] A "check-the-box" opinion is a form, sent to a doctor by one of the parties, requesting the doctor's opinion based on information provided. The form also provides various opinions, and the doctor need only check off any with which he agrees.

of numb hands and swollen feet. Accordingly, the Board held that Protection One was the responsible party for claimant's carpal tunnel syndrome. However, since Protection One was not a party, the Board could not assign responsibility to that employer. The Board also rejected Brett's testimony that the work activities at Day were the major contributing cause because his opinion was based on an incomplete medical history. Therefore, neither Wells Fargo nor Day was held responsible.

■ On judicial review, claimant makes three assignments of error. Claimant's first assignment of error is that the Board erred, as a matter of law, in considering an issue raised for the first time on appeal. At oral argument, claimant conceded that the Board's review is *de novo*. *Destael v. Nicolai Co.*, 80 Or App 596, 600, 723 P2d 348 (1986) ("The Board has *de novo* review and is free to make any disposition of the case it deems appropriate."). The Board has broad discretion to consider arguments raised for the first time on appeal. We accept claimant's concession and reject her first assignment.

Claimant's next two assignments of error concern the last injurious exposure rule. In *Reynolds Metals v. Rogers,* 157 Or App 147, 153, 967 P2d 1251 (1998), *rev den* 328 Or 365 (1999), we explained the last injurious exposure rule:

> "There are, at least, two aspects of [the last injurious exposure rule]: (1) proof of a compensable claim, and (2) assignment of liability between insurers. [The last injurious exposure rule] allows the injured worker to establish compensability based on all employment-related exposure without proving causation against any particular employer or insurer. Once it is established that a condition is work related, the rule assigns initial responsibility to the last period of employment whose conditions might have caused the disability. The 'onset of disability' is the triggering date for determining which employment is the last potentially causal employment. If the injured worker receives medical treatment before experiencing time loss due to the condition, then the date of first medical treatment is determinative for assigning initial responsibility for the claim." (Citations omitted.)

Claimant argues that the Board misapplied the last injurious exposure rule. According to claimant, by finding Protection One responsible rather than an employer against whom a claim was made, the Board improperly used the last injurious exposure rule as a "sword" against claimant. Essentially, claimant would have the last injurious exposure rule transfer liability to a previous or subsequent employer when the presumptively initially responsible employer is not joined in the proceeding.

■ While it does provide a certain advantage to claimants by easing their burden of proving compensability and also by assigning responsibility, "[t]he last injurious exposure rule is not intended to transfer liability from an employer whose employment caused a disability to a later employer whose employment did not." *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 244, 675 P2d 1044 (1984). The onset of disability is the triggering date for determining which employment presumptively *caused* the condition. The presumptively responsible employer "can transfer liability to a previous employer by establishing that it was impossible for its employer to have caused the condition" or "the initially responsible insurer can transfer liability to a subsequent insurer by establishing that the subsequent employment actually contributed to a worsening of the condition." *Reynolds Metals*, 157 Or App at 153. However, we find no support for, and do not agree with, the proposition that liability can be transferred to a previous or subsequent employer if the claimant fails to file a claim against or join the presumptively responsible employer.[2] Accordingly, if the "onset of disability" occurred while claimant was at Protection One, then Protection One is the presumptively responsible employer, and the Board did not err in failing to assign initial responsibility to either Wells Fargo or Day.

■ The question raised by claimant's last assignment of error is whether there was substantial evidence to support the Board's conclusion that the "onset of disability" was in

---

[2] The one exception is that initial responsibility cannot be assigned to an out-of-state employer because Oregon has no jurisdiction over such employers. *The New Portland Meadows v. Dieringer*, 157 Or App 619, 622, 973 P2d 352 (1998), *rev den* 328 Or 365 (1999).

March 1994. We are unable to review the Board's order because it is not supported by substantial reason.

■    ORS 183.482(8)(c) provides that "[s]ubstantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *See Armstrong v. Asten-Hill Co.*, 90 Or App 200, 205, 752 P2d 312 (1988). In order for us to review for substantial evidence, "we must be able to know what the Board found as facts and why it believes that its findings led to the conclusions that it reached. That requires a reasoned opinion based on explicit findings of fact." *Id.*

The problem here is the Board's reliance on the medical "check-the-box" reports of Gardner and Henry. The Board stated that, "[b]ased on the reports from [Henry and Gardner], we find that claimant was first treated for [carpal tunnel syndrome] on March 14, 1994." Those reports were based on potentially inaccurate information provided by SAIF, which grouped the undated chart note containing the carpal tunnel syndrome notation with the March 14, 1994, chart note regarding numb hands and swollen feet. There is nothing in this record establishing that the undated note is part of the March 1994 note. The Board accepted the finding that the chart note was undated and that "[t]he ALJ admitted that chart note in evidence for the sole purpose of establishing that claimant was diagnosed with carpal tunnel syndrome at Kaiser sometime before mid-1995." The Board never explains why it accepted Henry's and Gardner's "check-the-box" reports notwithstanding that those opinions were based on a potentially inaccurate assumption—based on SAIF's submissions of the chart notes—that claimant was, in fact, diagnosed as having carpal tunnel syndrome in March 1994, while she was employed by Protection One, rather than in 1995 while she was employed by Wells Fargo. Thus, we do not understand how the Board found that the medical opinions were persuasive without resolving that issue. *See, e.g., SAIF v. January*, 166 Or App 620, 626, 998 P2d 1286 (2000) (Board's decision not supported by substantial reason where Board relied on expert's opinion but failed to acknowledge and reconcile a subsequent and inconsistent opinion from the same expert); *Liberty Northwest Ins. Corp. v. Verner*, 139 Or App 165, 169, 911 P2d 948 (1996) (Board's

decision accepting expert's opinion without explaining inaccuracies not supported by substantial reason). For us to meaningfully review the Board's opinion for substantial evidence, the Board must explain its reasons for relying on the opinions of Gardner and Henry when the doctors' opinions were based on a potentially inaccurate assumption that claimant was first diagnosed and treated for carpal tunnel syndrome in March 1994.

Reversed and remanded for reconsideration.