Argued and submitted September 7, 2001, decision of Court of Appeals reversed;
order of Workers' Compensation Board affirmed November 29, 2002

In the Matter of the Compensation of
Geoffrey R. Lewis, Claimant.

**SAIF CORPORATION**
and Oregon State University,
*Respondents on Review,*

*v.*

Geoffrey R. LEWIS,
*Petitioner on Review.*

(WCB 97-04909; CA A103052; SC S47997)

58 P3d 814

Robert J. Thorbeck, Salem, argued the cause and filed the petition for review for petitioner on review.

David L. Runner, Special Assistant Attorney General, Salem, argued the cause and filed the brief for respondents on review.

G. Duff Bloom, Cole, Cary, Wing & Bloom, P.C., Eugene, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and Balmer, Justices.**

DURHAM, J.

---

** De Muniz, J., did not participate in the consideration or decision of this case.

## DURHAM, J.

In this workers' compensation proceeding, the Workers' Compensation Board (board) concluded that claimant's occupational disease was compensable because medical evidence supported by objective findings established the existence of the disease, as ORS 656.802(2)(d) requires. The Court of Appeals reversed because, in its opinion, "objective findings," as defined in ORS 656.005(19), did not support the medical evidence of claimant's disease. *SAIF v. Lewis*, 170 Or App 201, 215, 12 P3d 498 (2000). Claimant seeks review of the Court of Appeals' decision. We reverse.

The requirement of "objective findings" in support of medical evidence of an occupational disease arises from ORS 656.802(2)(d), which provides:

> "Existence of an occupational disease or worsening of a preexisting disease *must be established by medical evidence supported by objective findings.*"

(Emphasis added.) ORS 656.005(19) defines "objective findings" as follows:

> " 'Objective findings' in support of medical evidence are verifiable indications of injury or disease that may include, but are not limited to, range of motion, atrophy, muscle strength and palpable muscle spasm. 'Objective findings' does not include physical findings or subjective responses to physical examinations that are not reproducible, measurable or observable."[1]

With that statutory framework in mind, we turn to the facts, which the board summarized as follows:

> "Claimant worked as a bioscience research technician for SAIF's insured. On February 11, 1997, claimant's work

---

[1] The legislature adopted the current definition of "objective findings" in 1995. Or Laws 1995, ch 332, § 1. The pre-existing definition of "objective findings" in ORS 656.005(19) (1993) provided:

> " 'Objective findings' in support of medical evidence include, but are not limited to, range of motion, atrophy, muscle strength, muscle spasm and diagnostic evidence substantiated by clinical findings."

In determining the meaning of the current statutory definition, we consider the pre-existing version of the definition as part of the statutory context. *SAIF v. Walker*, 330 Or 102, 109, 996 P2d 979 (2000).

involved cleaning a building which contained insecticides, herbicides and fungicides in liquid, powder and granular forms. Claimant and his co-workers moved the chemicals and cleaned the room. Claimant also scraped paint from the ceiling and walls to prepare them for repainting. The room was dusty and the work stirred up dust.

"Claimant wore protective clothing, including a charcoal respirator mask. The mask leaked. Claimant also wore goggles part of the time, but he took them off when they became fogged.

"During the job, claimant experienced fatigue and eye irritation. At about 3 p.m., after working, claimant felt 'flat,' disoriented, confused, and 'funny in the eyes.' He experienced eye irritation, tearing, coughing, and wheezing on his way home. That evening, claimant noticed a 'yellowish-whitish' powder in his nostrils. He had difficulty concentrating. By the next morning, claimant had a sore throat, sore neck, fatigue, dizziness, tinnitus, headache, sinus congestion, bright yellow phlegm and sputum, a chemical taste in his mouth, and vision abnormalities.

"Claimant continued working. He sought medical treatment from Dr. Huff, his regular physician in early March, 1997. By that time he was about 70 percent recovered. Dr. Huff referred claimant to Dr. Stringham, who examined claimant once and ordered tests. Dr. Stringham opined that claimant's work exposure caused the symptoms for which he sought treatment.

"Dr. Huff also referred claimant to Oregon Health Science University, where he was examined by Drs. Berlin and Burton on May 9, 1997. Dr. Quarum examined claimant on May 29, 1997. By that time, claimant believed that he was 95 percent recovered.

"Claimant filed a claim for exposure to pesticide-contaminated dust. * * * SAIF denied the claim for 'injury to [claimant's] respiratory system,' stating that there was insufficient evidence of 'a diagnosable condition relating to the chemical exposure.' * * *. Claimant requested a hearing."

The record contains conflicting evidence from expert witnesses. The board agreed with insurer that objective findings did not support the medical evidence of *some* of claimant's symptoms. No party challenges that conclusion on review. The board also concluded:

> "However, we note that [claimant's treating physician] Dr. Stringham reported: 'On a clinical basis, [claimant] has an exposure.' * * * Dr. Stringham's opinion in this regard is supported by claimant's additional symptoms, which included irritated eyes, sinus congestion, and production of bright yellow phlegm and sputum. Because the latter symptoms are observable and verifiable, they are 'objective' under the statute."

The board also found that Dr. Stringham's opinion was more persuasive than the contrary opinions of insurer's experts, stating that his "reasoning and conclusions are based on a more accurate history and are more consistent with claimant's clinical course * * *."

On judicial review from the board's order in claimant's favor, the Court of Appeals interpreted the definition of "objective findings" in ORS 656.005(19) to require a medical expert to perform three acts when diagnosing an injury or disease: (1) to conduct a medical examination to attempt to verify the injury or disease; (2) to succeed in verifying the injury or disease during the examination; and (3) to make findings in accordance with the examination and verification. Additionally, the Court of Appeals concluded: "Necessarily, then, the indications of an injury or disease must, at the time of the examination, be *presently* verifiable." *Lewis*, 170 Or App at 212 (emphasis in original). This court allowed review to determine whether the Court of Appeals has construed and applied correctly the statutory requirement of objective findings in the context of this case.

Our objective in construing the pertinent statutes is to determine the intent of the legislature. *McLean v. Buck Medical Services, Inc.*, 334 Or 17, 24, 45 P3d 120 (2002). We consider first the text and context of ORS 656.802(2)(d). The introductory clause of that statute, "[e]xistence of an occupational disease * * * must be established * * *[,]" states a proof

requirement. That is, before the board may deem an occupational disease to be compensable, the evidentiary record must persuade the board to find as fact that an occupational disease existed or exists as the claim asserts.[2]

■ The next phrase, "by medical evidence," indicates that a particular kind of evidence, that is, "medical evidence," must establish the existence of the occupational disease. The parties agree, as do we, that the opinion of a medical expert, such as Stringham in this case, qualifies as "medical evidence" under the statute.

The foregoing conclusions arise from a straightforward reading of the text of ORS 656.802(2)(d). All that remains is to construe that subsection's final phrase, "supported by objective findings." The legislature has defined "objective findings" in ORS 656.005(19). We focus our analysis on that definition.

The first sentence of ORS 656.005(19) defines " '[o]bjective findings' in support of medical evidence" as "verifiable *indications* of injury or disease" (emphasis added) and then sets out a nonexclusive list of illustrative examples "that may include, but are not limited to, range of motion, atrophy, muscle strength and palpable muscle spasm." An "indication" is "something (as a signal, sign, suggestion) that serves to indicate." *Webster's Third New Int'l Dictionary* 1150 (unabridged ed 1993). "Indicate" means

"to point out or point to or toward with more or less exactness : show or make known with a fair degree of certainty : as * * * to show the probable presence or existence or nature or course of : give fair evidence of : be a fairly certain sign or symptom of : reveal in a fairly clear way * * *."

*Id.* The word "verifiable" means "1 : capable of being verified 2 : susceptible to the possibility of being either theoretically or actually proved true or false by reference to empirical facts[.]" *Id.* at 2543.

---

[2] A claimant may seek compensation for an occupational disease from which the claimant has recovered, but must file the claim within the time limit established by law. *See* ORS 656.807 (setting out deadlines for filing claim for occupational disease).

■ The application of those definitions leads to the conclusion that the legislature intended the phrase "objective findings in support of medical evidence" in the first sentence of ORS 656.005(19) to refer to symptoms that indicate the probable presence of an injury or disease. Additionally, the indication of injury or disease must be *capable* of being "verified," that is, be susceptible to the possibility that a reference to empirical facts either theoretically or actually will prove the claim of injury or disease to be true or false. The four examples of conditions set out at the end of that sentence share each of those characteristics.

We draw attention to the significance of the legal context in which we apply the statutory definition in ORS 656.005(19). As noted below, the requirement in ORS 656.005(19) that an indication of injury or disease be *capable of being verified* itself does not establish an additional requirement that the indication of injury or disease also be *present*, such as during a doctor's diagnostic examination of the claimant. In the present case, we apply the requirement of "medical evidence supported by objective findings," ORS 656.802(2)(d), in the context of a dispute over *compensability*, that is, whether the medical evidence was sufficient to support a finding that claimant *had or has* an occupational disease. Other statutes may alter the issues to which medical evidence supported by objective findings must respond. For example, ORS 656.283(7) provides procedures for a hearing regarding a worker's disability following reconsideration under ORS 656.268. That statute states:

> "Evaluation of the worker's disability by the Administrative Law Judge shall be as of the date of issuance of the reconsideration order pursuant to ORS 656.268. Any finding of fact regarding the worker's impairment must be established by medical evidence that is supported by objective findings."

If a claimant contends in a hearing under ORS 656.283(7) that a temporary disability has become permanent, then the medical evidence supported by objective findings logically must be sufficient to support a finding of fact that the disability not only existed, but has become permanent.

As the foregoing discussion demonstrates, the statutory context of the dispute and the claims of the parties ordinarily will determine the legal and factual issues that medical evidence supported by objective findings must address. This case requires the court to consider the requirement of medical evidence supported by objective findings only in the context of a compensability dispute arising under ORS 656.802(2).

■ We turn to the second sentence of ORS 656.005(19). The legislature added the second sentence of ORS 656.005(19) in 1995. Or Laws 1995, ch 332, § 1. That sentence excludes from the definition of "objective findings" both "physical findings" and "subjective responses to physical examinations" that "are not reproducible, measurable or observable." That sentence incorporates a double negative ("* * * does not include * * * that are not * * *"), the linguistic effect of which is to identify certain kinds of diagnostic conclusions that constitute verifiable indications of injury or disease that qualify as "objective findings." Such objective findings include either physical findings or subjective responses to physical examinations that are "reproducible, measurable or observable." The second sentence of ORS 656.005(19) presents those three characteristics as alternatives. It follows that, in amending ORS 656.005(19) in 1995, the legislature determined that any one of those characteristics, if established, will serve to qualify a physical finding or a subjective response to a physical examination as a verifiable indication of injury or disease that will constitute an "objective finding."

We construe those three characteristics according to their ordinary meaning. As the following definitions confirm, each of those characteristics refers to the *capability* of a physical finding or a subjective response to a physical examination being reproduced, measured, or observed. The dictionary defines "reproducible" as *"capable of being reproduced* : permitting reproduction * * *[.]" *Webster's* at 1927 (emphasis added). The dictionary defines "measurable" as

> *"capable of being measured* * * *; specif* : large or small enough to be measured * * * : great enough to be worth consideration : SIGNIFICANT * * *[.]"

*Id.* at 1399 (emphasis added). The dictionary defines "observable" as

> "requiring or suitable to ˙be observed, regarded or kept * * * : deserving of observation : NOTEWORTHY * * * : *capable of being observed* : DISCERNIBLE, DETECTABLE, NOTICEABLE ‹an [observable] decline in health› * * *[.]"

*Id.* at 1558 (emphasis added).

The text of ORS 656.005(19) is significant to our interpretive task both for what that statutory definition contains and for what it does not contain. The term "verifiable" identifies a *characteristic* of an indication or symptom of an injury or disease. The terms "reproducible," "measurable," and "observable" identify *characteristics* of physical findings or subjective responses to physical examinations that qualify those diagnostic conclusions as verifiable indications of injury or disease. The statutory definition of "objective findings," however, does not prescribe a particular diagnostic methodology for making an objective finding about an injury or disease or determining whether one of those characteristics is present. For example, the statute does not address how a health care professional must conduct an examination or form a diagnosis of a claimant's injury or disease. The definition simply anticipates that the person who makes the objective finding will determine, in some medically acceptable way, whether the claimant had or has an indication of injury or disease. However, unlike the Court of Appeals, we find no support in the statutory definition for an additional requirement that the person who makes the objective finding also must verify, *when he or she examines the claimant,* that the injury or disease *presently* exists.[3] The Court of Appeals' interpretation would alter the statutory definition by requiring health care professionals to rely solely on *verified,* rather than *verifiable,* indications of injury or disease, and physical findings or subjective responses to physical examinations that are *reproduced, measured,* or *observed,* rather than those that are *reproducible, measurable,* or *observable.*

---

[3] As already noted, the factual and legal issues to which medical evidence supported by objective findings must pertain may change with the context in which they arise.

The wording of ORS 656.005(19) illustrates why the foregoing is true. ORS 656.005(19) anticipates that the person who makes a finding in support of medical evidence of injury or disease will identify the particular indication or indications of injury or disease on which he or she relies. An indication of injury or disease must be one that permits the board to characterize it as "verifiable," or permits the board to characterize a physical finding or subjective response to a physical examination as "reproducible, measurable or observable." Whether those adjectival characterizations accurately describe a particular indication of injury or disease is a factual question for the trier of fact, subject to appellate review for support by substantial evidence.

An essential characteristic of the definition in ORS 656.005(19) is that it does not constrain the person who identifies an indication of injury or disease to rely solely on his or her own perceptions or examinations. Medical personnel act in accordance with ORS 656.005(19) by employing the range of diagnostic methods that their professions prescribe, including such techniques as consulting with nurses, technicians, therapists, and other health care professionals; examining the patient's medical records; reviewing the reports of witnesses, investigators, and police officers; and interviewing the patient, family members, friends, coworkers, and others who might have information that pertains to an indication of injury or disease. Information gleaned from such sources may be sufficient to establish that a claimant had or has an indication of injury or disease. If so, then the board properly may characterize that indication as "verifiable."

We have discovered no other contextual sources that shed any further or different light on the meaning of "objective findings" in ORS 656.005(19). In our view, the meaning of that statutory definition is clear and arises from the ordinary meaning of the terms that the legislature used in enacting that statute.

We next consider whether the board erred in concluding that medical evidence supported by objective findings, as defined in ORS 656.005(19), established the existence of claimant's occupational disease. In Stringham's opinion, claimant had an exposure to toxic chemicals. The

board accepted that evidence, and the parties agree that that evidence is "medical evidence" within the meaning of ORS 656.802(2)(d) and ORS 656.005(19). Thus, the only remaining question is whether "objective findings," as defined in ORS 656.005(19), support claimant's medical evidence.

As noted above, the board stated:

"Dr. Stringham's opinion in this regard is supported by claimant's additional symptoms, which included irritated eyes, sinus congestion, and production of bright yellow phlegm and sputum. Because the latter symptoms are observable and verifiable, they are 'objective' under the statute."

Were the symptoms that the board and Stringham cited "verifiable" indications of disease within the meaning of ORS 656.005(19)? We agree with the board that the answer is yes. All the conditions that the board listed above and that Stringham recorded in claimant's medical history are physical indications of disease and, thus, the board properly could consider them as "physical findings" within the meaning of the second sentence of ORS 656.005(19). Moreover, all the symptoms were "observable" within the meaning of the statute because, when they occurred, they were *capable* of being observed. Specifically, an observer could detect the irritation in claimant's eyes by noticing the discoloration, swelling, or other indications of irritation. The same capability of observation applies to other conditions that claimant reported, such as the presence of phlegm and sputum. Both the board and Stringham determined that claimant was a credible witness, and they accepted as true claimant's factual claim that he had suffered the additional symptoms recited above immediately after his toxic exposure.

Stringham concluded that claimant's indications of disease had subsided substantially at the time he examined claimant. We agree with the board that that circumstance does not preclude a determination that claimant's indications of disease were verifiable within the meaning of ORS 656.005(19). All that the statutory definition requires is that the indication of disease be verifiable *at some time*. The definition does not require that the indication of disease be present during a physical examination of the claimant, including

an examination that occurs after the claimant's symptoms have subsided.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is affirmed.