Argued and submitted September 5, 2019, affirmed May 13, 2020

In the Matter of the Compensation of
David M. Williams, Claimant.

SAIF CORPORATION
and Baker County School District #61,
*Petitioners,*

*v.*

David M. WILLIAMS,
*Respondent.*

Workers' Compensation Board
1200237; A167310

466 P3d 1052

Petitioners, SAIF Corporation and Baker County School District #61, seek review of an order of the Workers' Compensation Board (board), which reversed SAIF's denial of claimant's new or omitted medical condition claim. In *SAIF v. Williams*, 281 Or App 542, 381 P3d 955 (2016) (*Williams I*), the Court of Appeals vacated and remanded the board's order, which had concluded that claimant established the compensability of a "new medical or omitted medical condition" claim under ORS 656.267. On remand, the board reconsidered claimant's claim and once again concluded that he had established the compensability of a new or omitted medical condition. In this appeal, SAIF argues that the board erred by (1) finding medical causation contrary to the law of the case and without substantial evidence and substantial reason and (2) applying an incorrect legal standard for determining the compensability of claimant's new or omitted medical condition claim. *Held*: The board did not err. With regard to SAIF's first assignment of error, the Court of Appeals concluded that the board appropriately conformed to its remand instructions in *Williams I*, that the board's findings and conclusions were supported by the record, and that the board adequately explained its conclusions. With regard to SAIF's second assignment of error, SAIF did not preserve its argument because, by raising it first in its reply brief upon remand from *Williams I*, it did not provide claimant with a meaningful opportunity to respond to it.

Affirmed.

David L. Runner argued the cause and filed the briefs for petitioners.

Julene M. Quinn argued the cause and filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.*

MOONEY, J.

Affirmed.

_____

* Egan, C. J., *vice* Hadlock, J. pro tempore.

**MOONEY, J.**

Petitioners, SAIF Corporation and Baker County School District #61, appeal, for the second time in the life of this case, an order of the Workers' Compensation Board (Board). In the first of petitioners' appeals, we vacated and remanded the board's order, which had concluded that claimant established the compensability of a "new medical or omitted medical condition" under ORS 656.267 for a "thoracic spine Tarlov cyst." *SAIF v. Williams*, 281 Or App 542, 543, 381 P3d 955 (2016) (*Williams I*). On remand, the board reconsidered claimant's claim in light of our decision and once again concluded that claimant established the compensability of a new or omitted medical condition under ORS 656.267 for his thoracic spine Tarlov cyst. On review, petitioners argue that the board erred by (1) finding medical causation contrary to the law of the case and without substantial evidence and substantial reason and (2) applying an incorrect legal standard for determining the compensability of claimant's new or omitted medical condition claim. We reject petitioners' arguments and conclude, for reasons explained below, that the board did not err upon remand. Accordingly, we affirm the board's order.

In *Williams I*, we held that, because the board relied on two significant factual inaccuracies in finding in favor of claimant, its order was unsupported by substantial evidence. *Id.* at 551. Upon remand, the board reconsidered the facts presented and the parties' arguments without those inaccuracies, and it once again found in favor of claimant. On appeal, the parties no longer dispute the relevant facts of this case. We therefore describe the record as it is presented to us.

## I.   FACTUAL BACKGROUND

As we stated in *Williams I*:

"Claimant was compensably injured on March 10, 2006, when he fell through some rotting boards while walking on a ramp. He struck the ground, later describing the pain as 'like being kicked in the back by a horse.' Three days later, he was evaluated at a trauma center and received a diagnosis of a possible T5-6 facet joint fracture. On March 23, 2006, claimant was examined by Dr. Ha, who diagnosed a

thoracic strain. SAIF accepted a claim for thoracic strain. In July 2006, Ha found the thoracic strain medically stationary without permanent impairment, although claimant continued to experience severe thoracic symptoms. A July 27, 2006, notice of closure did not award compensation for permanent impairment.

"Over the next several years, claimant continued to experience thoracic pain and spasms. He sought treatment from at least 16 physicians over a four-and-a-half-year period. Different MRI scans revealed, among other things, mild posterior T7-8 and T8-9 disc protrusions and multiple Tarlov cysts throughout the thoracic spine neural foramina. The largest Tarlov cyst was at T5-6. Claimant also underwent multiple neurological evaluations of his thoracic spine. Several different physicians who treated claimant during that period opined that the Tarlov cyst at the T5 level was likely an 'incidental finding' and not causing symptoms."

*Id.* at 543-44.

The board thoroughly described claimant's medical history and the opinions of the doctors who evaluated him after his injury. The first of those opinions was Ha's, who, in March 2006—nearly two weeks after claimant's injury—found that claimant's pain in his midthoracic region "radiate[d] both proximally and distally from there," and that claimant was neurologically intact without deficiency.

Dr. Denekas, in November 2006, reported that claimant experienced pain in his midthoracic region, which did "not radiate around his chest," but did, according to claimant, "expand to approximately a 6″ diameter area of discomfort." Denekas diagnosed claimant with his previously accepted condition of a "thoracic strain, medically stationary, with no obvious impairment," and diffuse jerking, which he did not believe was related to any type of neurological disorder.

In April 2007, an MRI revealed mild T7-8 and T8-9 disc protrusions and a "small nerve root sheath cyst on the left at T5-6." The radiologist stated that the cyst was "likely to represent an incidental finding despite the fact that it is at the level of [claimant's] reported pain and muscle spasms." A May 2008 MRI showed small disc protrusions at T8-9 and

T9-10 and small cysts at a number of locations along the spinal column, including at T5-6.

In January 2009, Dr. Sabahi examined claimant's Tarlov cysts, which he found to range in size from 4-6 mm. Sabahi opined that if the cysts were nearly three times that size—over 1.5 cm—and located more centrally within the spinal canal, they might cause symptoms. However, because they were so small and not centrally located, he did not believe that they caused claimant's symptoms.

In June 2009, Dr. Gambee treated claimant. Gambee reported that claimant experienced mid back pain and some muscle spasms, but no associated radicular pain. Gambee concluded that the cysts were not the cause of claimant's pain and that they were probably present before his workplace injury. That indicated to Gambee that most of claimant's pain was musculoskeletal in nature and simply related to his original workplace injury—not neurological symptoms related to the cysts.

Only after claimant conducted his own internet research into Tarlov cysts did he contact Dr. Feigenbaum, who is an expert in the field of Tarlov cysts. Around that time, in August 2010, claimant was again examined at Oregon Health and Science University (OHSU). In that examination at OHSU, he reported sharp pain between his shoulder blades, which was reported as "intermittent radiation around chest into xyphoid just below nipples." That was the first time on the record that he reported radiation around his sides and to his chest.

In October 2010, Feigenbaum considered claimant's history, imaging studies, and the fact that he experienced seven and one-half hours of relief from symptoms when treated with trigger point injections. Claimant described that relief as a "major breakthrough." Shortly thereafter, Feigenbaum diagnosed claimant with a "large left T5 Tarlov cyst that appeared to be compressing the nerve root." For that, Feigenbaum recommended surgery.

In November 2010, Feigenbaum physically examined claimant for the first time and performed a left T5 laminectomy and treatment of a left T5 Tarlov cyst. Claimant's

symptoms resolved after the surgery. Feigenbaum opined that claimant's March 2006 work injury caused the T5 Tarlov cyst to become symptomatic and require treatment. In December 2010, claimant filed a new/omitted medical condition claim for the T5 Tarlov cyst condition, arguing that his work injury was a material contributing cause of his symptoms, and thus caused his need for treatment of the T5 Tarlov cyst.

## II.  PROCEDURAL HISTORY

At SAIF's request, in December 2011, Dr. Rosenbaum examined claimant. After doing so, Rosenbaum concluded that, because claimant had multiple cystic abnormalities throughout his spine, his cysts were "[c]onsistent with a congenital pathologic abnormality and not a single traumatic event." Rosenbaum opined that the pain associated with the cyst could not be related to claimant's work injury, in part, because he did not believe that Tarlov cysts can ever become symptomatic. He also believed that claimant's post-surgery relief from symptoms indicated that he had experienced a placebo effect from his surgery. Rosenbaum based that belief on the fact that claimant had a recurrence of similar symptoms a few months after his surgery, following an incident in which he overextended his leg while stepping in a hole. Although those symptoms abated, they indicated to Rosenbaum that claimant's surgery likely caused him to experience temporary relief from a placebo effect, because if the cyst had been the problem, surgery would have permanently relieved his symptoms and they would not recur after he overextended his leg. SAIF was persuaded by Rosenbaum's opinion and, on December 15, 2011, SAIF denied the T5 Tarlov cyst claim. Claimant then requested a hearing.

The matter was heard by an administrative law judge (ALJ). In presenting its case, SAIF primarily relied on the opinions of Sabahi and Rosenbaum. Sabahi opined that claimant's T5 Tarlov cyst existed before his work injury and that, because the cyst was relatively small, it should not have caused symptoms. He then explained that, even if the cyst could cause claimant's symptoms, they were likely not causally related to the work injury itself. He and Rosenbaum

agreed that claimant's mechanism of injury (*i.e.*, stepping through a board and landing hard on his foot) was not consistent with the development of a traumatic perineural cyst with the symptoms that claimant described. They also agreed that claimant's post-surgery relief from symptoms was likely the result of a placebo effect.

In support of his claim, claimant presented Feigenbaum's opinion. Feigenbaum ultimately concluded that claimant's work injury was the material contributing cause of his need for treatment of the Tarlov cyst. Feigenbaum explained that he spoke with claimant and reviewed his symptom history, imaging, and chart notes. From those observations, he concluded that surgery would help resolve claimant's symptoms. He also recounted his observations during surgery, which further led him to conclude that claimant's workplace aggravation of his T5 Tarlov cyst caused his symptoms. The ALJ set aside SAIF's denial of the claim, ordering SAIF to accept the claim. The ALJ found that the claim was compensable based primarily on a determination that Feigenbaum's opinion was more persuasive than those of Rosenbaum and Sabahi.

On review, the board affirmed the ALJ's order. The board agreed with the ALJ's conclusion that Feigenbaum's opinion was more persuasive than that of the other doctors. It based that determination, in part, on the fact that Feigenbaum operated on and thus physically observed claimant's cyst and that claimant's symptoms abated after surgery. The board, however, also based its decision on two facts not in the record: (1) a statement that Feigenbaum personally examined claimant a month before his surgery, and (2) a finding that Ha noted symptoms in the T5 dermatome "radiating *to the chest*" shortly after claimant's work injury.

Petitioners appealed the board's decision and we reversed and remanded. We explained that the board's decision was not supported by substantial evidence in light of the two misstatements of fact. *Id.* at 551. We stated that "it is at least plausible that the board's misstatement affected the board's decision to credit Feigenbaum's opinion over that of Sabahi's." *Id.* Because we could not determine to what extent the board relied on those errors in formulating

its decision, we remanded to the board for reconsideration. *Id.*

On remand, the board again affirmed the ALJ's order requiring SAIF to accept a T5 Tarlov cyst as a new or omitted condition. In doing so, the board acknowledged that its recitation of the record was partially inaccurate. It reconsidered Feigenbaum's report alongside each of the other doctors' reports and again concluded that Feigenbaum's analysis was more persuasive. Accordingly, the board concluded that claimant's injury was the material contributing cause of his symptoms and need for treatment of the Tarlov cyst, and of the "condition" itself.

First, acknowledging its earlier misstatement of Feigenbaum's pre-surgery examinations, the board noted that Feigenbaum's opinion was still more convincing than those of the other doctors, in part, because he personally observed claimant's condition during surgery. It found that Feigenbaum's opinion was "well-reasoned and persuasive," explaining:

> "Feigenbaum, who is an expert in the treatment of Tarlov cysts, was provided with all of the pertinent medical records, considered claimant's symptom presentation, imaging studies, and his treatment at OHSU, and observed claimant's condition during surgery. He explained that the causal relationship between the cyst and the symptoms was evidenced by the compressed nerve root he found at surgery, the procedure he performed to separate the nerve from the cyst and to obliterate the cyst, and claimant's post-surgery relief of symptoms. *** He explained how claimant's thoracic radicular symptoms following the work injury correlated with a T5 cyst and that it was common for Tarlov cysts to become symptomatic after a traumatic event, 'probably due to further or worsening nerve compression or inflammation.'"

The board also explained why Feigenbaum persuasively rebutted the opinions of Rosenbaum and Sabahi:

> "In response to Dr. Sabahi's observation that the cyst was too small to be causing symptoms, Dr. Feigenbaum responded that because the cyst existed in a small space, it was 'more about where the cyst is located and what it's

pressing on[.]' *** Regarding Dr. Rosenbaum's and Sabahi's opinion that claimant's recurrence of symptoms after a post-surgery off-work fall supported a conclusion that the surgery likely caused a placebo effect, Dr. Feigenbaum explained that the post-surgical fall likely irritated the sacral nerves causing a recurrence of symptoms, but this did not mean that the surgery was not successful. Rather, Dr. Feigenbaum reasoned that it meant that nerves were re-irritated. He reasoned that claimant had improved since, indicating that it was a temporary irritation and the benefits of the surgery were retained and real, not placebo.

"Finally, we do not consider the opinions of Drs. Rosenbaum and Sabahi persuasive as they focused on whether the injury caused the Tarlov cyst, and did not adequately consider whether it caused a disability or need for treatment. *** Yet, claimant need not prove that the injury caused the cyst; rather, he must establish that the injury was a material cause of his disability/need for treatment for the claimed condition. Under such circumstances, we consider Drs. Sabahi's and Rosenbaum's opinions less persuasive in resolving the compensability issue."

(Footnote omitted.).

The board concluded that claimant established a "new medical or omitted medical condition" under ORS 656.267 for a "thoracic spine Tarlov cyst," affirming the ALJ's order. One member of the board dissented, concluding that claimant did not prove that his injury caused his need for treatment of the cyst, in part, because Feigenbaum's opinion did not sufficiently address claimant's apparent lack of symptoms between 2006 and 2010.

### III.   ANALYSIS

Petitioners again appeal the board's order, raising two assignments of error. First, petitioners argue that the board erred by finding medical causation contrary to the law of the case, and without substantial evidence or substantial reason. That assignment of error has three components, and we address each in turn. Second, petitioners argue that the board erred by applying the wrong legal standard for determining the compensability of a new or omitted medical condition claim.

Before turning to those assignments of error, we describe the relevant legal framework that we use to review the board's decision. A workplace injury is compensable in a workers' compensation action so long as it is "an accidental injury, \*\*\* arising out of and in the course of employment requiring medical services or resulting in disability or death." ORS 656.005(7)(a). ORS 656.267 establishes the procedure for a claimant to initiate a claim for a new or omitted medical condition. ORS 656.267 does not, however, explicitly provide a standard to prove that a new/omitted medical condition claim arises out of the worker's employment. We therefore apply the "material contributing cause" standard to determine whether claimant's work injury was compensable.[1] *See* ORS 656.003 ("Except where the context otherwise requires, the definitions given in this chapter otherwise govern its construction."); *Schleiss v. SAIF*, 354 Or 637, 643-44, 317 P3d 244 (2013) (explaining that an injury, as defined by ORS 656.005(7)(a), "arises out of" employment "if the labor being performed in the employment is a material, contributing cause which leads to the unfortunate result" (internal quotation marks omitted)); *Olson v. Safeway Stores, Inc.*, 132 Or App 424, 429-30, 888 P2d 1084 (1995) (applying the "material contributing cause" test for an aggravation claim where the statute governing aggravation claims did not supply one).

Thus, to prove the existence and compensability of a new or omitted medical condition, the claimant must prove that his or her injury was the "material contributing cause" of the disability or need for treatment of the new or omitted condition. *Schleiss*, 354 Or at 643-44; *Olson v. State Ind. Acc. Com.*, 222 Or 407, 414, 352 P2d 1096 (1960). "The claimant bears the burden of proving the existence and compensability of a new or omitted condition by a preponderance of the medical evidence." *Williams I*, 281 Or App at 548; *see also* ORS 656.226(1) (requiring the claimant to prove the compensability of an injury or occupational disease); *De Los-Santos v. Si Pac Enterprises, Inc.*, 278 Or App 254, 257, 373 P3d 1274, *rev den*, 360 Or 422 (2016) ("[T]he legislature

---

[1] As noted and further explained below, we do not address whether the standard of proof of causation has changed, as petitioners argue in their second assignment of error.

intended that a claimant would bear the burden of proving the existence of a claimed new or omitted condition in the context of a claim under ORS 656.267[.]”). The claimant must do so via expert medical opinion. *Barnett v. SAIF*, 122 Or App 279, 282, 857 P2d 228 (1993).

We review the board's legal conclusions for legal error and its determinations on factual issues for substantial evidence and substantial reason. *Luton v. Willamette Valley Rehabilitation Center*, 272 Or App 487, 490, 356 P3d 150 (2015). “Substantial evidence exists when the record, viewed as a whole, permits a reasonable person to find as the Board did, in the light of supporting and contrary evidence.” *State Farm Ins. Co. v. Lyda*, 150 Or App 554, 559, 946 P2d 685 (1997), *rev den*, 327 Or 82 (1998). “In determining whether the board's order is supported by substantial reason, we consider whether that order articulates the reasoning that leads from the facts found to the conclusions drawn.” *Walker v. Providence Health System Oregon*, 254 Or App 676, 686, 298 P3d 38, *rev den*, 353 Or 714 (2013) (internal quotation marks omitted).

A.   *Second Assignment of Error*

We first address and reject petitioners’ second assignment of error. Petitioners argue that the board erred by evaluating petitioner's claim for a new/omitted medical condition under a standard requiring petitioner to prove that his work injury was the “material contributing cause of the need for treatment or his disability.” That burden of proof of causation was incorrect, petitioners argue, because the legislature has altered the statutory scheme regulating claims for new conditions, and because *Brown v. SAIF*, 361 Or 241, 391 P3d 773 (2017), required “claimant arguably [to] show that the work injury not only made a condition ‘symptomatic,’ but contributed to the condition itself.” Claimant responds that this assignment of error was unpreserved because petitioners first raised it in their reply brief upon remand, which deprived him of a meaningful opportunity to respond to petitioners’ argument.

We reject petitioners’ argument because we agree with claimant that this assignment of error is unpreserved. The “touchstone” of the preservation doctrine “is procedural

fairness to the parties and to the trial court." *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008). "[A]n assigned error is preserved for our review if the issue underlying the assignment of error was raised in the lower tribunal in a manner that gave all opposing parties a fair opportunity to respond and make their own cases with respect to the issue, and that gave the lower tribunal a fair opportunity to resolve the issue and avert the error claimed before us." *Snyder v. SAIF*, 287 Or App 361, 365, 402 P3d 743 (2017) (citing *Peeples*, 345 Or at 219-21).

At the initial hearing, petitioners acknowledged that the relevant standard required claimant to demonstrate that his work injury caused his symptoms and his need for treatment of those symptoms. The board applied that standard of proof both times that it considered the case. Because raising a different theory in their reply brief on remand after our decision in *Williams I* deprived claimant of a meaningful opportunity to respond to petitioners' argument before the board, petitioners did not preserve this assignment of error. We, therefore, reject petitioners' second assignment of error without further discussion.

B.   *First Assignment of Error*

We turn now to petitioners' first assignment of error, which consists of three separate arguments: (1) that the board's order violated the law of the case, (2) that the order lacked substantial evidence, and (3) that the order lacked substantial reason. We address them each, in turn.

1.   *Law of the case*

Petitioners start with the proposition that, in *Williams I*, we held that Ha's chart notes precluded a finding that claimant experienced symptoms in the T5 dermatome shortly after his injury. Petitioners then assert that the board erred when it found that claimant "established that such symptoms were always present," despite our ruling in *Williams I*.

The law of the case doctrine mandates that "an appellate decision is binding and conclusive for purposes of future proceedings in the same case." *Estrada v. Federal Express Corp.*, 298 Or App 111, 118, 445 P3d 1276, *rev den*,

365 Or 769 (2019). The only binding portions of an appellate court's decision, however, are those that are "necessary to the disposition of the appeal." *Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 53, 110 P3d 615, *rev den*, 339 Or 544 (2005) (internal quotation marks omitted).

We reject petitioners' argument that the board's opinion is contrary to the law of the case. Petitioners interpret our holding in *Williams I* too broadly; if we had held that claimant's lack of specific symptoms reported in Ha's notes, on its own, precluded the board's reliance on Feigenbaum's opinion regarding causation, we would not have remanded the case to the board. In *Williams I*, we held only that, because the board mistakenly relied on a fact not present in Ha's report, remand was required for the board to determine whether it still found Feigenbaum's opinion more persuasive than those of the other doctors—in light of that correction of the record. *Williams I*, 281 Or App at 551. We explicitly left open the possibility that the board could conclude that Feigenbaum's opinion was persuasive and that it could provide the basis for finding medical causation; we simply required that it do so without relying on factual inaccuracies. *See id.* ("[I]t is at least plausible that the board's misstatement affected the board's decision to credit Feigenbaum's opinion over Sabahi's. Because it is not possible for us to determine to what extent the errors *** affected the board's decision, we remand to the board for reconsideration."). On remand, the board based its conclusion that claimant experienced symptoms on Feigenbaum's opinion—not Ha's. It also found causation based on an accurate description of the record, which we recognized to be a possible outcome on remand. Its analysis, therefore, did not violate the law of the case.

2.  *Substantial evidence*

We also reject petitioners' argument that the board erred by finding medical causation unsupported by substantial evidence. Petitioners point to what they believe to be the "elephant in the room"—essentially, that the board disregarded a significant amount of evidence supplied by numerous doctors who concluded that claimant's workplace injury was *not* the material contributing cause of claimant's need

for treatment of a T5 Tarlov cyst. They present several doctors' opinions that the board did not address, as well as those of Sabahi and Rosenbaum, to argue that there is insufficient evidence indicating that claimant actually experienced the alleged symptoms between his injury and when he was evaluated in 2010. Accordingly, they say, Feigenbaum's opinion alone cannot support an award for a new/omitted medical condition claim.

"[W]hether a condition is encompassed within a new or omitted condition claim is * * * a question of fact that we review for substantial evidence." *Labor Ready v. Morgensen*, 275 Or App 491, 497, 365 P3d 623 (2015). "Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make that finding." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 294, 787 P2d 884 (1990). Thus, we will not disturb the board's conclusion that a new/omitted medical condition claim is compensable so long as its interpretation of competing medical evidence is reasonable. *Labor Ready*, 275 Or App at 498. If its interpretation is reasonable, will not reverse the board's order, even if competing medical evidence could also support the opposite conclusion. *See Akins v. SAIF*, 286 Or App 70, 76, 398 P3d 463, *rev den*, 362 Or 94 (2017) (concluding that the board's decision was supported by substantial evidence, despite the possibility that it could have also reasonably adopted the opposite conclusion).

Notwithstanding the volume of medical opinions supporting petitioners' theory of the case, we find that the board's order was supported by substantial evidence. Feigenbaum's opinion and the medical evidence that the board found provided a reasonable basis to support the board's conclusion. The record reflects that the board weighed the evidence by evaluating the content of the opinions and testimony and not by simply counting the number of expert witnesses presented by the parties. To be sure, the board could have adopted its dissenting member's conclusion and reached a different result. However, that does not render its opinion unsupported by substantial evidence. *See id.*

Feigenbaum relied upon the chart notes of other providers in reaching his conclusion that claimant experienced

symptoms consistent with a T5 Tarlov cyst dating back to the approximate time of his injury. That included Ha's notes from March 2006, indicating that claimant presented "pain in his midthoracic region," which "radiate[d] both proximally and distally from there,"[2] as well as a note from 2010 indicating that claimant experienced pain "wrapping around his chest and ending up at the xyphoid process."[3] In reaching his opinion, Feigenbaum reviewed and considered all the doctors' notes created between 2006 and 2010, his consultation with claimant and evaluation of claimant's reported symptoms, his pre-surgery examination of claimant, his surgery and personal observation of claimant's T5 Tarlov cyst, his medical expertise, and claimant's post-surgery relief from symptoms. Feigenbaum was permitted to learn about claimant's symptom presentation (pain in his back wrapping around to his chest) from claimant himself, and he was permitted to use the reports available and his expertise to formulate his conclusion about what caused claimant's need for treatment. *See SAIF v. Lewis*, 335 Or 92, 101, 58 P3d 814 (2002) (explaining that a doctor may rely on his or her interview of a patient to produce adequate objective medical findings). Put another way, he was not required to independently verify everything that claimant told him about his symptoms. Because the board's reliance on Feigenbaum's objective medical findings was reasonable, substantial evidence supported its conclusion.

3. *Substantial reason*

Relatedly, petitioners argue that the board's order was not supported by substantial reason. They argue that, even if the board could rely solely on Feigenbaum's report, the board was required to provide a more thorough explanation

---

[2] The board in *Williams I* stated that Ha's notes indicated that "claimant had experienced symptoms *at T5 and radiating to the anterior chest* as early as two weeks after the work injury." *Williams I*, 281 Or App at 549 (emphasis in the original). We reversed because Ha's notes did not specifically indicate that claimant experienced those symptoms, which would have been consistent with an aggravated T5 Tarlov cyst. Here, however, the board relied solely on the information actually present in Ha's record—that claimant experienced *pain* in his midthoracic region, which radiated both proximally and distally. Feigenbaum relied on that symptom presentation when analyzing claimant's injury.

[3] The "xyphoid process" is the area at the bottom of the sternum in the chest. *Stedman's Medical Dictionary* 1836 (28th ed 2006).

for why it chose Feigenbaum's analysis over those of the other experts. We reject that assignment of error because the board adequately explained its conclusion.

"In determining whether the board's order is supported by substantial reason, we consider whether that order articulates the reasoning that leads from the facts found to the conclusions drawn." *Walker*, 254 Or App at 686 (internal quotation marks omitted). We will generally reverse the board's order for a lack of substantial reason when it fails to resolve material factual discrepancies present on the record, or when it fails to explain how its facts led to its conclusion. *See Federal Express Corp. v. Estrada*, 275 Or App 400, 407, 364 P3d 25 (2015) (finding that the board's order lacked substantial reason when it included inconsistent factual findings and failed to rationally connect those findings to its conclusion); *Hamilton v. Pacific Skyline, Inc.*, 266 Or App 676, 682, 338 P3d 791 (2014) (holding that the order was not based on substantial reason because the board failed to connect its factual findings to its conclusion); *Christman v. SAIF*, 181 Or App 191, 197-98, 45 P3d 946 (2002) (holding that the board's order was not based on substantial reason when it did not explain inconsistent factual findings).

Before announcing its conclusions of law, the board thoroughly described claimant's history of symptom presentation and treatment. It considered our opinion in *Williams I* and described its findings (without misstating the record). The board then articulated each of the relevant doctors' opinions about the cause of claimant's symptoms and his need for treatment. It described Sabahi's opinion: that claimant's injury likely did not cause claimant's symptoms because his Tarlov cyst was relatively small, and that his injury "was not conducive to 'blowing out' nerve root sheaths" near claimant's cyst. Finally, it described Feigenbaum's opinion: that pre- mid-, and post-surgery observations of claimant's conditions and claimant's symptoms were consistent with a Tarlov cyst becoming "symptomatic after trauma due to worsened nerve compression or inflammation," likely caused by his work injury.

The board determined that the compensability of claimant's Tarlov cyst ultimately came down to a credibility

contest between Feigenbaum and Sabahi. Proceeding from the facts articulated, the board found Feigenbaum's opinion more persuasive because: (1) Feigenbaum considered claimant's history of symptom presentation; (2) Feigenbaum observed that claimant's imaging studies suggested an inflamed nerve root sheath aggravated by a T5 Tarlov cyst; (3) Feigenbaum relied on his expertise in Tarlov cysts to evaluate claimant—an expertise that none of the other doctors shared; (4) Feigenbaum was the only doctor to actually operate on and physically observe claimant's cyst; and (5) claimant's symptoms resolved after his surgery.

The board also explained why it did not find other doctors' opinions to be more persuasive. It found that Sabahi's and Rosenbaum's opinions failed to squarely address the specific issue of causation because they concluded that claimant's workplace injury did not *cause* the Tarlov cyst itself. But, the cause of the Tarlov cyst itself was not relevant to compensability. Claimant was required to establish that his injury was the material contributing cause for his need for his *disability* or need for *treatment* of the Tarlov cyst. In any event, the board found that Feigenbaum's opinion also "persuasively support[ed] a conclusion that the claimed T5 Tarlov cyst was a 'condition' (*i.e.*, the physical status of a body party), rather than just a symptom." The board properly focused on the elements required to determine compensability, and it explained that the opinions of Sabahi and Rosenbaum did not adequately address those elements.

Finally, the board considered Feigenbaum's response to the other doctors' opinions. Addressing Sabahi's opinion that the cyst was too small to cause the symptoms claimant described, Feigenbaum explained that the symptom presentation "was more about where the cyst [was] located and what it[] [was] pressing on" than it was about size. Addressing the placebo effect opinion based upon the recurrence of symptoms weeks after surgery, Feigenbaum explained that claimant's post-surgery fall likely irritated "the sacral nerves, causing a recurrence of symptoms." He added that the eventual disappearance of symptoms supported the conclusion that his surgery had likely been successful. The board's adoption of those findings adequately

addressed the Sabahi and Rosenbaum opinions in the context of its findings.

    The board thoroughly considered Feigenbaum's analysis and explained why it adopted his conclusion that claimant's work injury was the material contributing cause of his need for treatment. Those conclusions logically followed the board's findings of fact, and they resolved the doctors' conflicting opinions and reports.[4] The opinion was supported by substantial reason. Accordingly, the board did not err upon remand.

    Affirmed.

---

[4] Petitioners also present reports of doctors that the board did not address in its opinion, arguing that the board should have explicitly addressed them. After reviewing those reports, we conclude that the board did not err by declining to do so. The omitted reports largely focus on the fact that claimant did not appear to present neurological symptoms consistent with an aggravated T5 Tarlov cyst until 2010. The board already addressed that issue, explaining that it found Feigenbaum's opinion credible and persuasive when he opined that (1) claimant *did* experience symptoms consistent with an aggravated nerve root associated with a T5 Tarlov cyst, and (2) claimant's 2006 work injury caused that aggravation. The board was not required to dispute each doctor's contrary observations when those observations were redundant.